FRANK A. WEISER, (Bar No. 89780)
Attorney at Law
3460 Wilshire Blvd., Ste. 1212
Los Angeles, California 90010
(213) 384-6964  - (voice)
(213) 383-7368  - (fax)
maimons@aol.com - (e-mail)

Attorney for Plaintiffs
DEAN HOTOP, KEN SCHNEEBELI,
JEFF ZELL, SHERMAN ZELL, LOIS
ZELL, LOUISE PETER, SEIGI
TADOKORO, PAT CREMA, SEAN
RHINEHART, SHUCHUN HUANG, JAMES
CAMPAGNA, SAL RUIZ, ISAAC AGAM,
STEVE MAHL, LLOYD KIP, ROBERTA
MOORE, DENG LIU, SHASHA CHEN,
XIAODONG LI, ZHONGHUA PEI,
XIAOCONG YE, SMALL PROPERTY
OWNERS ASSOCIATION - SAN JOSE, in
its representative capacity on
behalf of its association members

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN HOTOP; KEN SCHNEEBELI; JEFF ZELL; SHERMAN ZELL; LOIS ZELL; LOUISE PETER; SEIGI TADOKORO; PAT CREMA; SEAN RHINEHART; SHUCHUN HUANG; JAMES CAMPAGNA; SAL RUIZ; ISAAC AGAM; STEVE MAHL; LLOYD KIP; ROBERTA MOORE; DENG LIU; SHASHA CHEN; XIAODONG LI; ZHONGHUA PEI; XIAOCONG YE; SMALL PROPERTY OWNERS ASSOCIATION - SAN JOSE, in its representative capacity on behalf of its association members, | Case No. COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF [Violation of Federal Civil Rights Rights - 42 U.S.C. Section 1983] **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |

vs.

CITY OF SAN JOSE, a municipal
corporation; AND DOES 1 THROUGH
10 INCLUSIVE,

                    Defendants.

Plaintiffs DEAN HOTOP, KEN SCHNEEBELI, JEFF ZELL, SHERMAN ZELL, LOIS ZELL, LOUISE PETER, SEIGI TADOKORO, PAT CREMA, SEAN RHINEHART, SHUCHUN HUANG, JAMES CAMPAGNA, SAL RUIZ, ISAAC AGAM, STEVE MAHL, LLOYD KIP, ROBERTA MOORE, DENG LIU, SHASHA CHEN, XIAODONG LI, ZHONGHUA PEI, XIAOCONG YE, SMALL PROPERTY OWNERS ASSOCIATION - SAN JOSE, in its representative capacity on behalf of its association members (collectively "Plaintiffs," or "SPOA-SJ") hereby file the following Complaint and state and allege as follows:

## JURISDICTION AND VENUE

1.   Jurisdiction of the federal court exists pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343 (a)(3).   This action, which arises under the laws and Constitution of the United States, specifically, under the Fourth and Fourteenth Amendments, and involves violations of federal law actionable pursuant to 42 U.S.C. Section 1983.

2.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) in that Defendant CITY OF SAN JOSE ("Defendant" or "City"), is a public entity in this District

2

1  and the claims arose in this District.

2  PARTIES

3  3. Plaintiffs are long standing apartment owners

4  and operators in the City of San Jose.

5  4. SPOA-SJ is an unicorporated trade association of

6  apartment owners and operators in the City of San Jose, of

7  which DH and KS are members, along with multiple other

8  members of SPOA-SJ who join in this lawsuit.

9  5. SPOA-SJ sues in its representative

10 capacity on behalf of its association members for declaratory

11 and injunctive relief only.

12 6. The City is a municipal corporation formed and

13 operating under its local charter and the laws of the State

14 of California.

15 7.     The true names and capacities, whether

16 individual, corporate, associate or otherwise, herein named

17 as DOES 1 through 10, and persons heretofore unknown

18 involved in the actions taken against plaintiffs are unknown

19 to him at this time. Plaintiff is informed and believes and

20 based thereon alleges that each of the DOE defendants is

21 responsible in some manner for the occurences herein referred

22 to, and that plaintiff's injuries and damages as herein

23 alleged were proximately caused by those defendants.

24 Plaintiff sues said defendants by such fictitious names on

25 the grounds that the true names and capacities of said

26

27

28                                3

defendants are unknown to them at this time. Plaintiff will amend this complaint when the true names and capacities of said DOE defendants are ascertained. Each reference in this complaint to "defendant", "defendants" or a specifically named defendant also refers to defendants sued under fictitious names.

PRELIMINARY FACTUAL HISTORY

8. On November 28, 2017, the City passed and adopted Ordinance No. 30032 ("Ordinance"), effective December 29, 2017, amending parts 1 through 8 and adding a new part 9 to Chapter 17.23 of Title 17 of the San Jose Municipal Code to revise the Apartment Rent Ordinance. A true and correct copy of the ordinance is attached hereto as Exhibit "A".

9. Concurrent with the adoption of the ordinance, the City adopted Resolution 78413 ("Regulations") adopting regulations for the implementation of the ordinance. A true and correct copy of the ordinance is attached hereto as Exhibit "B".

10. Plaintiffs are subject to the ordinance and regulations.

11. The ordinance and regulations, at Section 17.23.900, establish a "Rent Registry" which requires that a property owner subject to the ordinance and regulations, complete and submit a registration form for each "Rent Stablized Unit", as defined in the ordinance and

4

regulations, on an approved City form ("City Form"), on an annual basis.

12.   The regulations at Section 4.05 define the contents of the form to include, in pertinent part:

a. The address of the Rent Stabilized Unit;

b. The occupancy status of the Rent Stabilized Unit, and if occupied, the commencement date of the current tenancy;

c. History of Rent charged for the use and occupancy of the Rent Stabilized Unit;

d. The amount of security deposit charged at the inception of the tenancy;

e. The number of tenants occupying the unit, and the tenants' names;

f. Household services that are being provided at the inception of the tenancy.

13. The Rent Registry disclosure requirements, as set forth in paragraphs 15 and 16 above, are required for plaintiffs to disclose to the City, without consent of the plaintiffs, or consent of plaintiffs' tenants, or a court order as required under the Fourth Amendment of the United States Constitution.

14.   The ordinance also has a provision at Section 17.23.600 entitled "Notices of Termination of Tenancy-Mandatory Notices to City" that provides in pertinent part at Subsection C.:

"Unless the Landlord is already obligated
to re-register the Rent Stabilized Unit
on vacancy or re-rental pursuant to the
Regulations, once a Tenant Household has
vacated a Rent Stabilized Unit such Landlord
shall be required to provide the Director
with the following information in a form
approved by the Director, subject to
California Civil Code 1947.7, as amended:

1. The amount of Rent that the subsequent
Tenant is actually paying each month; and

2. The physical address of the Rent Stabilized
Unit; and

3. The name of each subsequent tenant; and

4. A copy of the written rental agreement
(if any) between the Landlord and Tenant; and

5. The reason, the prior Tenant vacated the
Rent Stabilized Unit, if known; and

6. Such other information as may be reasonably
requested by the City.

15. The ordinance at Section 17.23.600, Subsectioon
D, entitled "Use of Personal Information" that provides in
pertinent part:

"Personally identifying information about
Tenants and Tenant Households received
by the City pursuant to this Section

6

shall be used for investigation and prosecution of violations of the Municipal Code or other applicable laws." (emphasis added).

16.   The ordinance at Section 17.23.700, entitled "Tenant Buyout Agreements" provides in pertinent part that:

"The purpose of this Part 7 is to increase the fairness of Buyout Offers and Agreements by requiring Landlords provide Tenants with a City Disclosure form, and permitting Tenants to rescind Buyout Agreements, provided certain conditions, are met, within forty-five (45) days of executing the Buyout Agreement. **An additional goal is for the City to obtain data relating to the prevalence of Buyout Agreements, so as to monitor the level of tenant displacement, and regulate compliance with the purposes of this Chapter.**" (emphasis added).

17.   The ordinance disclosure requirements, as set forth in paragraphs 11-16 above, are required for plaintiffs to disclose to the City, without consent of the plaintiffs, or consent of plaintiffs' tenants, or a court order as required under the Fourth Amendment of the United States Constitution.

7

18.     Plaintiffs' tenants also have a fundamental liberty and property interest that protects their privacy under the California Constitution that is a "state created" liberty and property interest incorporated and protected under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

19.     The ordinance and regulations, as set forth in paragraphs 11-16 above, in requiring that plaintiffs divulge their tenant's sensitive rental information without requiring notice and consent from the tenants, or a court order infringes on their tenants fundamental privacy rights protected under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and subjects plaintiffs to liability from such tenants both under state and federal law.

20.     In addition, under the City's municipal code a violation of any ordinance and regulations carries with it an additional threat of civil and criminal penalties, and under the Ordinance, if plaintiffs do not comply they cannot increase rents on their tenants.

Based on the above facts, Plaintiffs allege the following claims:

FIRST CLAIM FOR RELIEF

(Violation of Civil Rights Under 42 U.S.C.

Section 1983 by Plaintiffs Against All

Defendants)

21.    Plaintiffs reallege and incorporate herein by reference to each and every allegation contained in Paragraphs 1 through 20, and all its subparts, inclusive, as set forth hereinabove.

22.    Plaintiffs are informed and believe, and based upon such information and belief allege, that in doing all of the things herein mentioned, the City, and defendants, and each of them, acted under color of the statutes, regulations, customs and usages of the City of San Jose, and the State of California for purposes of "state action" and "color of law" under 42 U.S.C. Section 1983.

23.    Plaintiffs are further informed and believe, and based upon such information and belief allege, that by taking the actions hereinabove alleged in paragraphs 1-20 above, the City and defendants, and each of them, violates and further threatens to violate the constitutional and civil rights of plaintiffs, in particular its individual rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from an unreasonable search and seizure of its property, both on its face under the ordinance and regulations as applied to plaintiffs; and further violates under the Fourth Amendment

9

by imposing under the ordinance, on its face and as applied to plaintiffs, an unconstitutional condition and restriction on its ownership and renting of property in violation of the Fourth Amendment and the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

24.   Plaintiffs are further informed and believe, and based upon such information and belief alleges, that by taking the actions hereinabove alleged in paragraphs 1-20 above, the City and defendants, and each of them, violates and further threatens to violate the constitutional and civil rights of plaintiffs, in particular its individual rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that similarly situated property owners and operators whose properties are not classified as subject to the ordinance and regulations, such as duplexes, multifamily rental properties constructed after September 7, 1979 and other rentals, have not, and are not, being treated by the City as plaintiffs are under the restrictions of the ordinance and regulations.

25.   The City's actions described in paragraphs 1-20 above were done pursuant to official policy, custom, or practice of the City.

26.   As a proximate result of the foregoing acts of defendants, and each of them, the plaintiffs are threatened to suffer extreme hardship and damages, which damages

include, but is not limited to, economic damages, entitling plaintiffs to appropriate damages relief in an amount to be proven at trial, and plaintiffs, including SPOA-SJ, suing on behalf of its members to appropriate declaratory and injunctive relief against all the defendants, and to its reasonable attorneys fees under 42 U.S.C. section 1988.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

### FIRST CLAIM FOR RELIEF

1. For damages according to proof at trial,

2. For declaratory and injunctive relief;

3. For attorney's fees pursuant to 42 U.S.C. Section 1988;

4. For costs of suit; and

5. For such other and further relief as the Court deems just and proper.

DATED: April 3, 2018

LAW OFFICES OF FRANK A. WEISER

By: _____

FRANK A. WEISER, Attorney for Plaintiffs DEAN HOTOP, KEN SCHNEEBELI, JEFF ZELL, SHERMAN ZELL, LOIS ZELL, LOUISE PETER, SEIGI TADOKORO, PAT CREMA, SEAN RHINEHART, SHUCHUN HUANG, JAMES CAMPAGNA, SAL RUIZ, ISAAC AGAM, STEVE MAHL, LLOYD KIP, ROBERTA MOORE, DENG LIU, SHASHA CHEN, XIAODONG LI, ZHONGHUA PEI, XIAOCONG YE, SMALL PROPERTY OWNERS ASSOCIATION - SAN JOSE, in its representative capacity on behalf of its association members

11

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a jury trial pursuant

3

to F.R.C.P. 38.

4

5

DATED: April 3, 2018               LAW OFFICES OF FRANK A.

6                                                   WEISER

7

By: _____

8                         FRANK A. WEISER, Attorney for
                          Plaintiffs DEAN HOTOP, KEN

9                         SCHNEEBELI, JEFF ZELL, SHERMAN
                          ZELL, LOIS ZELL, LOUISE PETER,

10                        SEIGI TADOKORO, PAT CREMA, SEAN
                          RHINEHART, SHUCHUN HUANG, JAMES

11                        CAMPAGNA, SAL RUIZ, ISAAC AGAM,
                          STEVE MAHL, LLOYD KIP, ROBERTA

12                        MOORE, DENG LIU, SHASHA CHEN,
                          XIAODONG LI, ZHONGHUA PEI,

13                        XIAOCONG YE, SMALL PROPERTY
                          OWNERS ASSOCIATION - SAN

14                        JOSE, in its representative
                          capacity on behalf of its

15                        association members

16

17

18

19

20

21

22

23

24

25

26

27

28

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"



**City Clerk**

## CITY OF SAN JOSÉ, CALIFORNIA

Office of the City Clerk
200 East Santa Clara Street
San José, California 95113
Telephone (408) 535-1260
FAX (408) 292-6207

STATE OF CALIFORNIA)
COUNTY OF SANTA CLARA)
CITY OF SAN JOSE)

I, Toni J. Taber, City Clerk & Ex-Officio Clerk of the Council of and for the City of San Jose, in said County of Santa Clara, and State of California, do hereby certify that **"Ordinance No. 30032"**, the original copy of which is attached hereto, was passed for publication of title on the **14th day of November, 2017,** was published in accordance with the provisions of the Charter of the City of San Jose, and was given final reading and adopted on the **28th day of November, 2017,** by the following vote:

AYES:      ARENAS, DAVIS, DIEP, JONES, JIMENEZ, KHAMIS, NGUYEN, ROCHA; LICCARDO.

NOES:      NONE.

ABSENT:      CARRASCO, PERALEZ.

DISQUALIFIED:      NONE.

VACANT:      NONE.

Said Ordinance is effective as of **29th day of December, 2017.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of San Jose, this **1st day of December, 2017.**

(SEAL)

TONI J. TABER, CMC
CITY CLERK & EX-OFFICIO
CLERK OF THE CITY COUNCIL

/rmk

RD:SSG:KML
11/17/2017

## ORDINANCE NO. 30032

**AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING PARTS 1 THROUGH 8 AND ADDING A NEW PART 9 TO CHAPTER 17.23 OF TITLE 17 OF THE SAN JOSE MUNICIPAL CODE TO REVISE THE APARTMENT RENT ORDINANCE**

**BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:**

SECTION 1.  Parts 1 through 8 of Chapter 17.23 of Title 17 of the San José Municipal Code are hereby amended in their entirety to read as follows:

**Part 1**

**General**

### 17.23.010  Title

Parts 1 through 9 of this Chapter 17.23 shall be known as the "Apartment Rent Ordinance."

### 17.23.020  Policy and Purposes Declaration

The purposes of the Apartment Rent Ordinance are to promote stability and fairness within the residential rental market in the City, thereby serving the public peace, health, safety, and public welfare.  The Apartment Rent Ordinance recognizes the value of residential rental units as a critical resource amid the continuing shortage of and persistent demand for housing in the City of San José.  In July 1979, the City enacted a rent control ordinance to alleviate some of the more immediate needs created by San José's housing situation: including but not limited to the prevention of excessive and unreasonable rent increases, the alleviation of undue hardship upon individual tenants, and the opportunity for landlords to earn a fair return.  To further protect tenants from excessive and unreasonable rent increases, the Apartment Rent Ordinance generally limits annual rent increases, requires notices be provided to the City, regulates how much and what types of costs may be passed through to tenants, provides for monitoring of

RD:SSG:KML
11/17/2017

rents, and provides for an administrative review process for housing-related disputes. The rights and obligations created by the Apartment Rent Ordinance for landlords and tenants are created pursuant to the City's general police powers to protect the health, safety, and welfare of its residents and are in addition to any rights and obligations under state and federal law.

### 17.23.030  Scope and Application

Parts 1 through 9 of the Apartment Rent Ordinance apply to each Rent Stabilized Unit, as defined in Section 17.23.167 and, as applicable, to each Covered Property as defined in Section 17.23.123.

### 17.23.040  Regulations; Forms Authorized

The City Manager may adopt or amend regulations for the administration and implementation of the Apartment Rent Ordinance.  The Director, with the approval of the City Attorney, may adopt forms and notices to facilitate the administration and implementation of the Apartment Rent Ordinance. All forms and notices called for in this Chapter and the Regulations shall be adopted by the Director unless otherwise indicated.

### 17.23.050  Notice of Apartment Rent Ordinance to Tenant Households

A.     Each Landlord shall post a written notice and maintain such posting, on a form approved by the Director, of the applicability of the Apartment Rent Ordinance in a conspicuous location within each building containing one (1) or more Rent Stabilized Units.  The Landlord shall have complied with this requirement by posting a Notice of the Apartment Rent Ordinance in the same location as a notice to tenants posted in accordance with subsections (1) or (2) of California Civil Code Section 1962.5(a) or immediately adjacent to the posting of the Residential Occupancy Permit in compliance with Section 17.20.630.

RD:SSG:KML
11/17/2017

B.  Each Landlord shall notify the Tenant Household of the applicability of the
    Apartment Rent Ordinance prior to entering an oral or written rental agreement for
    a Rent Stabilized Unit.  The Landlord shall have complied with the affirmative
    obligation to notify a Tenant under this Section by providing (1) written notice that
    the Rent Stabilized Unit is subject to this Chapter and, (2) a copy of the current
    City informational notice or handbook for Tenants of Rent Stabilized Units
    ("Informational Notice"), if such notice is available from the City of San José, to the
    Tenant upon entering an oral or written rental agreement for the Rent Stabilized
    Unit.

**17.23.060  Limit on Electronic Payment**

It shall be unlawful for any Landlord to demand or require either cash or an electronic
funds transfer or online internet payment as the exclusive method of payment of Rent or
Security Deposits, except that cash may be required for a limited period of time under the
conditions allowed by California Civil Code Section 1947.3(a)(2), as amended.

**17.23.070  Reasonable Accommodation; Fair Housing**

A.  Nothing in this Chapter is intended to authorize a Landlord to deny a request for
    reasonable accommodation required under state or federal law, or to impose a
    charge for that accommodation where no charge is allowed by law.

B.  Nothing in this Chapter is intended to authorize a Landlord to avoid obligations
    imposed by federal, state or local fair housing law.

RD:SSG:KML
11/17/2017

## Part 2
## Definitions

### 17.23.100  General

Unless the context otherwise requires, the definitions set forth in this Part govern the construction of the Apartment Rent Ordinance.

### 17.23.105  Administrative Decision

"Administrative Decision" means a Petition Examiner's final written determination on a Landlord or Tenant Petition.

### 17.23.110  Affordable Rental Unit

"Affordable Rental Unit" means each Rental Unit that is owned or operated by any government agency, or any individual Rental Unit for which the Rent is limited to no more than affordable rent, as such term is defined in California Health & Safety Code Section 50053, for lower income households pursuant to legally binding restrictions recorded for the benefit of a government agency. However, if the ownership or operation, or the Rent limitation ceases, then the Rental Unit will no longer be considered an Affordable Rental Unit.  The presence of one (1) or more Affordable Rental Units in a Multiple Dwelling shall not exempt any other Rental Unit in the same building that does not also meet the definition of Affordable Rental Unit.

### 17.23.112  Annual General Increase

"Annual General Increase" shall have the meaning provided in Section 17.23.310.

### 17.23.115  Base Year

"Base Year" shall have the meaning provided in Section 17.23.810.B.

RD:SSG:KML
11/17/2017

### 17.23.116  Buyout Agreement

"Buyout Agreement" shall have the meaning provided in Section 2.01.3 of the Regulations.

### 17.23.117  Buyout Offer

"Buyout Offer" shall have the meaning provided in Section 2.01.4 of the Regulations.

### 17.23.120  Capital Improvements

"Capital Improvements" means building, unit or property additions or modifications that replace or enhance an existing physical feature of a Rent Stabilized Unit or of a building containing a Rent Stabilized Unit or that provides new Housing Services to the Tenants as compared to the level of services as previously provided.

### 17.23.121  Commission

"Commission" means the Housing and Community Development Committee or successor.

### 17.23.122  Consumer Price Index

"Consumer Price Index" means the Consumer Price Index For All Urban Consumers in the San Francisco-Oakland-San Jose all items index (1982-84 equals 100), as reported by the Bureau of Labor Statistics of the United States Department of Labor.  In the event a successor index to the Consumer Price Index for all urban consumers for all items for the San Francisco-Oakland-San Jose area or comparable area is established by the Bureau of Labor Statistics, this definition may be updated accordingly in the Regulations.

RD:SSG:KML
11/17/2017

### 17.23.123  Covered Property

"Covered Property" means an individual building or complex of buildings containing one (1) or more Rent Stabilized Units, together with any common areas.

### 17.23.124  Current Year

"Current Year" shall have the meaning provided in Section 17.23.810.C.

### 17.23.125  Director

"Director" means the City's Director of the Department of Housing or the Director's designee.

### 17.23.126  Ellis Act Ordinance

"Ellis Act Ordinance" means the ordinance codified in Part 11 of Chapter 17.23.

### 17.23.127  For-Cause Termination

"For-Cause Termination" is the termination of a tenancy based on a reason for eviction that would legally entitle a Landlord to evict a Tenant Household on three (3) days' notice under California Code of Civil Procedure Sections 1161(2) (for Tenant's nonpayment of Rent), 1161(3) (for Tenant's failure to perform a material term of rental agreement), or 1161(4) (for Tenant allowing a nuisance or other unlawful activity).

### 17.23.130  Gross Income

"Gross Income" shall have the meaning provided in Section 17.23.820.A.

### 17.23.131  Guest Room

"Guest Room" shall have the meaning provided in Section 20.200.460.

RD:SSG:KML
11/17/2017

### 17.23.132  Guesthouse

"Guesthouse" shall have the meaning provided in Sections 20.200.470 and 20.200.480.

### 17.23.135  Hearing Officer

"Hearing Officer" shall have the meaning provided in Section 2.01.11 of the Regulations.

### 17.23.136  Housing Services

"Housing Services" means those services provided and associated with the use or occupancy of a Rental Unit, including but not limited to repairs, replacement, maintenance, painting, light, heat, water, elevator service, pest control, laundry facilities and privileges, janitorial service, refuse removal, furnishings, telephone, parking, storage, and any other benefits, privileges, or facilities.

### 17.23.137  Initial Rental Rate

"Initial Rental Rate" means the actual amount paid by the Tenant for the use and occupancy of the Rent Stabilized Unit at the commencement of the tenancy, or in the case of a Rental Voucher Unit, the sum of the rent paid by the Tenant and government agency.

### 17.23.140  Landlord

"Landlord" means an owner, lessor, or sublessor who receives or is entitled to receive Rent for the use and occupancy of any Rental Unit or portion thereof, and the agent, representative, or successor of any of the foregoing.  For purposes of this Chapter, Landlord does not include an individual who is a member of the Tenant Household whose primary residence is the same Rental Unit as the Tenant.

RD:SSG:KML
11/17/2017

### 17.23.145  Multiple Dwelling

"Multiple Dwelling" means a multiple dwelling as that term is defined and used in Title 20 of this Code and includes all units subject to Part 8 of Chapter 17.20.

### 17.23.146  Municipal Code

"Municipal Code" means the San José Municipal Code.

### 17.23.150  Net Operating Income

"Net Operating Income" shall have the meaning provided in Section 17.23.810.A.

### 17.23.151  Notices

The following notices are defined terms for purposes of this Chapter with the following meanings.

A.     "Informational Notice" shall have the meaning provided in Section 17.23.050.B.

B.     Notice of the Apartment Rent Ordinance" shall have the meaning provided in Section 17.23.050A.

C.     "Notice of Re-Rental" shall have the meaning provided in Section 17.23.600.

D.     "Notice of Termination" means the notice informing a Tenant of the termination of its tenancy including but not limited to a notice to quit or vacate, a notice in accordance with California Civil Code Section 1946.1 or California Code of Civil Procedure Section 1162, as amended.

### 17.23.155  Operating Expenses

"Operating Expenses" shall have the meaning provided in Section 17.23.820.C.

RD:SSG:KML
11/17/2017

### 17.23.160 Petition

"Petition" shall have the meaning provided in Section 2.01.14 of the Regulations.

### 17.23.161 Petition Examiner

"Petition Examiner" shall have the meaning provided in Section 6.06.05 of the Regulations.

### 17.23.165 Regulations

"Regulations" means the regulations adopted by the City Council or pursuant to Section 17.23.040.

### 17.23.166 Rent

"Rent" means the consideration, including any funds, labor, bonus, benefit, or gratuity, demanded or received by a Landlord for or in connection with the use or occupancy of a Rental Unit, including Housing Services, or for the assignment of a lease or rental agreement for a Rental Unit, including subletting.

### 17.23.167 Rent Stabilized Unit

A.   "Rent Stabilized Unit" means a Rental Unit in any Guesthouse or in any Multiple Dwelling building for which a certificate of occupancy was issued on or prior to September 7, 1979 or that was offered or available for rent on or before this date.

B.   The following shall not be considered Rent Stabilized Units:

1.   Rooms or accommodations in hotels, motels, or Guesthouses which are legally rented to transient guests for a period of less than thirty (30) days consistent with the Municipal Code, except those rooms or accommodations subject to Part 2.5 of Chapter 20.80;

RD:SSG:KML
11/17/2017

2.  Housing accommodations in any hospital, convent, monastery, extended care facility, emergency residential shelter, residential care facility, residential service facility, nonprofit home for Senior Citizens (as defined in the Unruh Act, as may be amended), fraternity house or sorority house, or in dormitories owned and operated by an institution of higher education, a high school or elementary school;

3.  Affordable Rental Units; and

4.  Rental Units in a building containing only one (1) or two (2) dwelling units.

## 17.23.168  Rental Unit

"Rental Unit" means a structure or part of a structure (including but not limited to a Guest Room in a Guesthouse) offered or available for rent as a home, residence, or sleeping place, whether or not the residential use is a conforming use permitted under the San José Municipal Code, together with the land and appurtenant buildings thereto, and all Housing Services, privileges, and facilities supplied in connection with the use or occupancy thereof.  A Rental Unit shall not include a Mobilehome or Mobilehome Lot as defined in Section 17.22.160 and 17.22.170.

## 17.23.169  Rental Voucher Unit

"Rental Voucher Unit" means a Rental Unit that is restricted to occupancy by lower income households by a contract where the Tenant pays no more than 35% of their income towards the Rent, the remainder being paid with a government agency or a nonprofit administering government agency's funds, and where the rent is not increased on an annual basis, but only where allowed under the rules of the government agency.

RD:SSG:KML
11/17/2017

### 17.23.170  Section

"Section" means a numbered section in Municipal Code Chapter 17.23 unless otherwise indicated.

### 17.23.171  Security Deposit

"Security Deposit" shall have the meaning provided in California Civil Code Section 1950.5, as amended.

### 17.23.172  Specified Capital Improvements

"Specified Capital Improvements" shall have the meaning provided in Section 17.23.330.

### 17.23.175  Tenant

"Tenant" means a person or persons entitled by written or oral agreement, or by sufferance, to the use or occupancy of a Rental Unit.

### 17.23.176  Tenant Household

"Tenant Household" means all Tenant(s) who occupy any individual Rental Unit, and each minor child of any Tenant whose primary residence is the Rental Unit.

### 17.23.177  Tenant Protection Ordinance

"Tenant Protection Ordinance" means the ordinance codified in Part 12 of Chapter 17.23.

RD:SSG:KML
11/17/2017

**Part 3**

**Initial Rent and Rent Increases; Petition and Hearing Process**

**17.23.300   Initial Rent and Vacancy Decontrol**

A.      Valid Decontrol.  The Initial Rental Rate for a new tenancy in a Rent Stabilized Unit
may be set by the Landlord if the Rent Stabilized Unit was vacant due to one (1)
of the following two (2) circumstances.

   1.      Voluntary Vacancy.  The prior Tenant Household voluntarily terminated the
   tenancy.

   2.      For-Cause Termination.  A Landlord legally terminated the prior tenancy as
   a For-Cause Termination.

B.      Exceptions to Decontrol.  Only the Rent charged consistent with this Chapter to
the former Tenant, plus any annual adjustment authorized by this Chapter, may be
charged for a Rent Stabilized Unit in the following circumstances.

   1.      No Cause Termination.  A Landlord terminated a tenancy without cause in
   accordance with Section 1946.1 of the California Civil Code or Section 827
   of the California Civil Code.

   2.      Continuing Tenancy.  An existing Tenant or existing member of the Tenant
   Household, (including individuals who are not listed on an existing rental
   agreement), has entered into a new oral or written rental agreement for the
   same Rent Stabilized Unit.

   3.      Unlawful Landlord Activity.  A Landlord effectively terminated a tenancy
   without cause by encouraging the Tenant to terminate the tenancy through
   unlawful activities prohibited under the Tenant Protection Ordinance, the
   Apartment Rent Ordinance, or state law.

RD:SSG:KML
11/17/2017

4.      Any Other Illegal Evasion.  A Tenant terminated a tenancy because of illegal conduct by the Landlord or any other means by which a Landlord fraudulently seeks to set a new Initial Rental Rate.

## 17.23.310  Limits on Rent Increases

A.      Annual Rent Increase Limit.  The Rent of any Rent Stabilized Unit may not be increased by more than the Annual General Increase unless otherwise authorized by Petition. If the Landlord has not substantially complied with the City's request to register or re-register a Rent Stabilized Unit pursuant to the procedures in the Regulations, the Landlord may not increase the Rent for the Rent Stabilized Unit.

B.      The "Annual General Increase" is limited to:

The monthly Rent charged for the previous twelve (12) months for the Rent Stabilized Unit multiplied by five percent (5%).

C.      Rent Increase Frequency Limit.  Not more than one (1) Rent increase, including the Annual General Increase, any increase allowed under Chapter 13 of the Regulations, and any increase authorized by a final decision after a Petition may be imposed in any twelve (12)-month period. An increase in Rent authorized by a decision on a Petition filed pursuant to Section 17.23.350.C or Part 8 of this Chapter may be imposed after notice has been provided pursuant to California Civil Code Section 827, if the decision states that the initial increase is exempt from the 12 month interval requirement under this Section.

D.      Rental Voucher Unit - Rent Increases. During the time a Rental Unit serves as a Rental Voucher Unit, the Initial Rent shall be subject to this Chapter, but its Rent may be adjusted annually consistent with the published rules of the applicable government agency in lieu of the Rent adjustments allowed under this Chapter.

RD:SSG:KML
11/17/2017

### 17.23.315  Limits on All Fees and Pass Through Charges

A.   Reserved.

B.   Limitation on Fees. The following fees may not be charged to Tenants except as provided:

    1.   Excess Replacement Fees.   No Landlord shall charge a Tenant a replacement fee for a key or security card that exceeds the actual replacement cost plus ten dollars ($10.00) unless approved by Petition or the Regulations.

    2.   Excess Bounced Check Service Fees. No Landlord shall charge a Tenant a service charge for a dishonored ("bounced") check that exceeds the amount allowed under California Civil Code Section 1719 (a)(1), as amended. Landlord need not provide Tenant with a third party invoice for this service charge.

    3.   Late Payment Fees.   No Landlord shall charge a Tenant a fee for late payment of Rent exceeding a total of five percent (5%) of the monthly Rent for each payment of Rent that is three (3) or more days late.

    4.   Application Screening Fees. No Landlord shall charge a Tenant an application screening fee in excess of the amount allowed under California Civil Code Section 1950.6 (b), as amended.

C.   Separate Line-Item Required.   No Landlord may pass through any charge to any Tenant allowed under this Part unless the charge is clearly listed on the rental agreement and the Rent invoice (if any) and is accompanied by a true and correct copy of the invoice or bill paid by the Landlord for such charge.

D.   Tenant Petitions Authorized.   In the event a Tenant disputes the pass through of a charge or the calculation of the Tenant's share of the charge, the Tenant may file

RD:SSG:KML
11/17/2017

a Petition for a determination as to whether such charge may be passed through pursuant to this Section and whether the calculation of the Tenant's share comports with this Section and any Regulations governing such pass through. Any of the following reasons provide grounds for such a Petition:

1.  There exists a dispute as to the genuineness of the bill or the amount of the charge.

2.  The pass through of the charge is not authorized under this Chapter.

3.  There exists a dispute as to whether the Tenant had the right to use and occupy the Rental Unit during the billing period or any portion of the billing period.

4.  Mathematical errors in the relevant calculations.

5.  Copies of the Landlord's invoice or bill were not provided as required.

E.  Security Deposit

Except as provided in Section 17.23.320.C, a Security Deposit, once established, cannot be raised for the duration of the tenancy. For purposes of this Section only, where several Tenants occupy one (1) Rental Unit, the Tenancy shall be deemed to continue so long as any one (1) of the Tenants who occupied the Rental Unit when the deposit was set continues to occupy the Rental Unit.

## 17.23.320 Exceptions to Limits on Rent Increases and Other Charges

A.  Rent Increase Awards for Landlord Fair Return Petitions. A Landlord may increase rents in excess of the Annual General Increase to the extent a higher rent is authorized in a final Hearing Officer's decision on a Landlord Petition for fair return filed in accordance with Part 8 of this Chapter.

RD:SSG:KML
11/17/2017

B.    <u>Pass Through Awards for Landlord Specified Capital Improvements Petitions</u>. A Landlord may impose a pass-through charge in addition to Rent to the extent authorized in a final Administrative Decision or Hearing Officer's decision on a Landlord Specified Capital Improvements Petition filed in accordance with Section 17.23.330. Provided however, in no event may the total monthly amount imposed for Specified Capital Improvements exceed three percent (3%) of the monthly Rent validly charged for the Rent Stabilized Unit on the date of the filing of the Petition. Charges for Specified Capital Improvements shall not be considered Rent for purposes of this Chapter and shall not increase when Rent increases, nor shall they be considered part of Rent for the purpose of calculation of the Annual General Increase. Following a valid vacancy decontrol of Rent for a Rent Stabilized Unit in accordance with Section 17.23.300, any awarded charges for Specified Capital Improvements for that unit shall expire.

C.    <u>One-Time Payments for New Additional Housing Services</u>. A Tenant Household may file a joint Petition to allow the Tenant to make a payment of a one-time fee <u>or</u> increase the Tenant's Security Deposit in order to receive or be entitled to certain new or additional Housing Services that are expressly excluded in the written rental agreement, to the extent that these Housing Services that are identified in the Regulations. The one-time payment for new or additional Housing Services may not exceed five percent (5%) of the monthly Rent validly charged at the time of the Tenant request. The one-time payment or additional Security Deposit shall not be considered Rent for purposes of this Chapter and shall not be included when calculating a Rent increase or subject to the one (1) increase in any twelve (12)-month period limitations in Section 17.23.310.

## 17.23.325  <u>Council Initiated Exceptions to Limits on Rent Increases and Other Charges</u>

A.    <u>Other Fees, Charges, and Costs that May Be Passed Through to Tenants</u>. The following charges may be passed through to Tenants, separate from Rent only in

T-30318.003/ORD_30032.docx          16
Council Agenda: 11-14-17
Item No.:    4.5a

RD:SSG:KML
11/17/2017

compliance with the requirements below. These charges shall not be considered Rent for purposes of this Chapter and shall not increase when Rent increases, nor shall they be considered part of Rent for the purpose of calculation of the Annual General Increase.

Annual Fees imposed under Chapter 17.23.

1.     Reserved.

2.     New Charges. A Landlord may pass through to a Tenant a share of charges imposed on the Landlord by governmental agencies or by public utilities subject to regulation by the California Public Utilities Commission, subject to the limitations in subsection 3 below where all of the following conditions are met:

   a.     The charge is a new charge, as opposed to an increase in an existing charge, which the governmental agency or the public utility requires the Landlord to pay; and

   b.     Such pass through has been authorized by resolution of the City Council in which the charge in question was expressly identified; and

   c.     The Landlord passes through the charge in accordance with the rules specified in such a resolution adopted by the City Council and the Regulations; and

   d.     The Landlord passes through the charge in accordance with the rules specified in such a resolution adopted by the City Council and the Regulations.

RD:SSG:KML
11/17/2017

3.   Conditions to Pass Through Charges to Tenants.  No charge described in subsection 2 above may be passed through to any Tenant pursuant to this Section unless all of the following conditions are satisfied:

a.   The total charge by the Landlord may not exceed fifty percent (50%) of the total amount paid by the Landlord; and

b.   No Landlord may require a Tenant to pay any amount of any charge that is attributable to any period of time that the Tenant was not entitled to use and occupy the Rental Unit; and

c.   No Landlord may require a Tenant to pay any amount of any charge that is attributable to common areas or Rental Units other than the Tenant Household's Rental Unit; and

d.   No Landlord may require a Tenant to pay more than its share of the charge attributable to that Tenant 's Rental Unit that is permitted to be passed through to Tenant.

**17.23.330  Petitions for Pass Through for Specified Capital Improvements**

A.   Purpose.  The purpose of this Section is to provide an incentive for certain improvements by allowing Landlords to petition for a limited pass through to the Tenant of the amortized costs of the improvements listed in Appendix B to the Regulations ("Specified Capital Improvements") subject to the following conditions:

1.   The charge must comply with the limitations in Section 17.23.320.B.

2.   The Specified Capital Improvement must do one (1) of the following: provide new Housing Services or enhanced Housing Service functionality to the Tenants; increase the safety (including ADA accessibility), sustainability (water or energy conservation) or seismic readiness of the Rent Stabilized Unit (or of a building containing a Rent Stabilized Unit).

RD:SSG:KML
11/17/2017

3.   The Specified Capital Improvement must have been completed within twelve (12) months prior to the filing of the Petition and must meet the criteria in the Regulations.

B.   Petition Required.  A Landlord must petition for and receive an Administrative Decision authorizing a pass through for any costs to be charged to Tenants pursuant to this Section prior to passing through any charges.

C.   No Pass Through for Improvements to Maintain Existing Housing Services.  The following may not be passed through to the Tenant unless explicitly authorized by the Regulations: (1) the costs of a Specified Capital Improvement that replaces an existing physical feature of a Rent Stabilized Unit (or of a building containing a Rent Stabilized Unit) with a physical feature of similar kind and quality; or (2) the costs of a Specified Capital Improvement that maintains a similar level of functionality as a prior physical feature of a Rent Stabilized Unit (or of a building containing a Rent Stabilized Unit).

## 17.23.350  Petition Process

A.   Tenant Petitions.  There is hereby established a Tenant Petition process, which process and procedures shall be set forth in the Regulations.  A member of a Tenant Household may submit a Petition to the Director on any one (1) or more of the following grounds: to allege a Rent increase in violation of the Ordinance; to request a reduction in Rent based on decreased Housing Services; to contest a fee or charge as an unauthorized or excessive pass through; to allege other violations of the Ordinance or Regulations; or other specific grounds that may be provided by the Regulations.

B.   Landlord Petitions.  There is hereby established a Landlord Petition process, which process and procedures shall be set forth in the Regulations.  A Landlord may submit a Petition to the Director on any one (1) or more of the following grounds:

RD:SSG:KML
11/17/2017

to request a Rent increase in excess of the Annual General Increase in order to obtain a fair return as described in Part 8; to request the ability to pass through a charge for Specified Capital Improvements; or other specific grounds that may be provided by the Regulations.

C.  Joint (Unopposed) Petitions. There is hereby established a Joint Petition process, which process and procedures shall be set forth in the Regulations.  A Tenant may file a Petition to request approval of a one-time payment or Security Deposit increase pursuant to Section 17.23.320.C, if the Landlord has signed the Petition. Subject to the conditions in the Regulations, a Tenant may file a Petition for an increase in the Rent of up to five percent (5%) for an additional Tenant if additional occupants are prohibited in the written rental agreement or an increase in the Rent of up to fifty dollars ($50) for a second parking space if only one (1) parking space is reserved for the Tenant in a written rental agreement, provided that no increase in the Rent is allowed for a Tenant's dependent child, foster child, spouse, domestic partner, parent or minor in the Tenant's care, which terms may be further defined in the Regulations.

D.  Petitions Affecting Rental Voucher Units.
A Tenant or Landlord filing a Petition that applies to a Rental Voucher Unit must indicate that on the Petition and provide a copy of the Petition to the government agency or nonprofit administering government agency's funds within the time period specified in the Regulations for notice to the other party. The government agency or nonprofit administering government agency's funds shall be entitled to participate in the Petition process, and to file a Petition or response within the time period specified in the Regulations.

RD:SSG:KML
11/17/2017

**Part 4**

**Fees**

### 17.23.400  Fee - Rental Unit

The costs of providing services and administering this Chapter shall be reimbursed to the General Fund by imposition of a fee chargeable against each Rental Unit in the City of San José subject to the provisions of this Chapter. This is the fee previously codified in Section 17.23.480 and 17.23.490 pursuant to Ordinance No. 19696.

### 17.23.410  Fee – Timing, Method and Exemptions

A.     Timing and Method.  The fee imposed pursuant to Section 17.23.400 shall be paid at the time at which the residential occupancy permit fee, if applicable, is due and paid under Title 17 of this Code, provided that the fee may also be collected by a supplemental billing, or collected in an alternative manner if so provided in the Regulations.  Said fee may be included as an Operating Expense under the definition contained in Section 17.23.820.  The City Manager shall report to the City Council no less than once each year regarding the City Manager's recommendation and the recommendation of the Commission as to the amount of such fee necessary to recover the costs of administering this Chapter.  The amount of the fee shall be determined by resolution of the City Council adopted from time to time.  The fee shall not exceed the amount found by the City Council to be necessary to administer this Chapter, and the Council's finding in this regard shall be final. Payment by the Landlord of the fee shall be made at the same time and in conjunction with the residential occupancy permit fee, or in an alternative manner if so provided in the Regulations and the Director of Finance is hereby authorized to collect said fees in this manner.

B.     Late Payment.  Whoever fails, for more than thirty (30) days after date of notice, to pay the fee required hereunder shall, in addition to said fee, pay an additional late charge assessment as determined by resolution of the City Council.  No

RD:SSG:KML
11/17/2017

portion of any charge or fee for late payment or submission authorized by this Section, or any portion thereof, may be passed-through to the Tenant.

C.   Fee Credit Upon Transfer.   In the event the residential occupancy permit is transferred to a subsequent owner of the Rental Unit for which the fee has been paid, the subsequent owner shall be deemed to have paid said fee for the Rental Unit.

D.   Fee Exemptions.   The Regulations shall provide procedures and standards for a Landlord to prove eligibility for fee exemptions for Rent Stabilized Units based on claims of owner occupied units or units exempt pursuant to the definition provided in Section 17.23.167.B, Rent Stabilized Unit.

**Part 5**
**Enforcement**

**17.23.500 Penalties**

A.   Penalty for Violations of this Chapter.   In addition to all other remedies provided by law, including those set forth in Chapter 1.08 of Title 1 of the San José Municipal Code, and as part of any civil action brought by the City, a court may assess a civil penalty in an amount up to the greater of two thousand five hundred dollars ($2,500) per violation per day, or ten thousand dollars ($10,000) per violation, payable to the City, against any person who commits, continues, operates, allows, suffers, or maintains any violation of a provision of this Chapter 17.23, subject to California Civil Code Section 1947.7, as amended.

B.   Attorney Fees.   The prevailing party in any civil action brought pursuant to this Chapter 17.23 shall be entitled to the reasonable costs of bringing such civil action, including court costs and attorney fees.

RD:SSG:KML
11/17/2017

## 17.23.510 Retaliatory Eviction

Possession of a Rental Unit shall not be recovered by a Landlord from a Tenant, and the Tenant Household, who is not otherwise in violation of the terms of occupancy of the Rental Unit, if either:

A.     The Landlord's dominant motive in seeking to recover possession of the Rental Unit is retaliation against the Tenant for exercising any rights under this Chapter 17.23; or

B.     The Landlord's dominant motive in seeking to recover possession of the Rental Unit is to evade the purposes of this Chapter 17.23.

## 17.23.520 Waivers

A.     Nonwaiver.  Any waiver or purported waiver by a Tenant of rights granted under this Chapter 17.23 prior to the time when such rights may be exercised shall be void as contrary to public policy.

B.     Waiver of Rights.  It shall be unlawful for a Landlord to attempt or seek to waive, or to waive, in a written or oral rental agreement, the rights granted a Tenant under this Chapter prior to the execution of, or as a condition of entering into or extending, a written or oral rental agreement.

## 17.23.530 Excessive Rents Demanded or Received; Civil and Criminal Liability

A.     Misdemeanor.  Any Landlord found to have received, imposed, or demanded prohibited pass through charges, other fees or charges or any Rent in excess of the Rent allowed under this Chapter 17.23 and its implementing Regulations shall be guilty of a misdemeanor, subject to the provisions of California Civil Code Section 1947.7, as amended.

RD:SSG:KML
11/17/2017

B.   Civil Penalties.   Any person found to have demanded, accepted, received or retained any payment of Rent in excess of the Rent allowed under this Chapter 17.23 and its implementing Regulations or pass through charges, other fees or charges that are not allowed under this Chapter 17.23, shall be liable to the Tenant from whom such payment was demanded, accepted, or received for the amount that was impermissibly charged, plus damages as determined and not to exceed five hundred dollars ($500) or three (3) times the amount by which such payment exceeded the Rent allowed, whichever is greater.   Remedies provided in this paragraph are in addition to any other legal remedies and are not intended to be exclusive.

### 17.23.540  Affirmative Defense Against Unlawful Detainer Actions

Rent Stabilized Units.  A Landlord seeking to terminate a tenancy of a Tenant or Tenant Household for a Rent Stabilized Unit must comply with Section 17.23.600(A) of the Apartment Rent Ordinance and the Tenant Protection Ordinance.  Non-compliance shall constitute an affirmative defense for a Tenant of a Rent Stabilized Unit against any unlawful detainer action under California Code of Civil Procedure Section 1161.

### 17.23.550  Civil Action for Wrongful Eviction

In addition to any other remedies provided by law, any Landlord found to have evicted a Tenant from a Rental Stabilized Unit in violation of the Apartment Rent Ordinance is liable to that Tenant for a fine of up to ten thousand dollars ($10,000), and the reasonable costs incurred by the Tenant as a result of the eviction, including the costs of moving the Tenant Household and the reasonable costs of bringing such suit, including court costs and attorney fees.

RD:SSG:KML
11/17/2017

**17.23.560  Disclosure to Purchasers of Real Property**

A.   Any Owner, as that term is defined in Part 11 of this Chapter 17.23, of a Rent Stabilized Unit shall disclose to a potential buyer in writing, prior to the close of escrow that the Rent Stabilized Unit is subject to this Chapter 17.23 and implementing regulations.  Upon request by the City, such Owner or former Owner shall provide the City with a copy of such written disclosure.

B.   Failure of an Owner to make the disclosure set forth in Section 17.23.560 shall in no way excuse a purchaser of a Rent Stabilized Unit from any right, responsibility, or obligation under this Chapter 17.23.

**17.23.570  Administrative Citations; Injunctive Relief**

A.   The Director may enforce the rights and responsibilities created by this Chapter 17.23 and the Regulations, including issuance of an administrative citation in accordance with Chapter 1.15 of the San José Municipal Code.

B.   The City Attorney may seek injunctive relief to restrain or enjoin any violation of this Chapter or the Regulations.

**17.23.580  Rights and Obligations Cumulative**

A.   Rental in Violation of City Ordinance.  If a Landlord rents a Rent Stabilized Unit: (i) in violation of the City's Short Term Rental Ordinance, Part 2.5 of Chapter 20.80, or for an unpermitted non-residential use; (ii) in material violation of the City's Housing, Fire or Building Codes, Chapter 17.20, or Title 24; or (iii) in violation of the implied warranty of habitability, such rental shall also be considered a violation of this Chapter and may give rise to any of the remedies or penalties identified in this Part 5.

RD:SSG:KML
11/17/2017

B.　Tenant Protections.  Tenants shall have the right to seek the protections set forth in the Tenant Protection Ordinance in addition to any remedies available under Parts 1 through 9 of this Chapter.

C.　Failure to Provide a Notice of Termination; Evasion.  If a Landlord fails to comply with Section 17.23.600, requires a Tenant to enter into a new lease under another name, or otherwise seeks to evade the restrictions on Rent in this Chapter, such actions shall also be considered a violation of this Chapter and may give rise to any of the remedies or penalties identified in this Part 5.

D.　Additional Rights and Obligations.  The rights and obligations set forth in Parts 1 through 9 of this Chapter are in addition to those set forth in any other Part or Chapter of the Municipal Code.

## Part 6
## Evictions – Rent Stabilized Units

### 17.23.600  Notices of Termination of Tenancy - Mandatory Notice to City

A.　Copy of Notice of Termination to City.  A copy of each and every Notice of Termination issued to a Tenant of a Rent Stabilized Unit shall be filed with the Director within three (3) days after the service thereof on the Tenant.

B.　Supplement to Notice of Termination of Tenancy Filing.  Until the Rent Stabilized Unit is first registered pursuant to the Regulations, the copy of the Notice of Termination provided to the Director, excluding copies of the Notice of Termination based on a three (3)-day notice to pay or quit, shall be accompanied by a "filing statement" from the Landlord or property manager, made under penalty of perjury, setting forth all of the following information in a form approved by the Director:

1.　The amount of Rent that the Tenant Household being evicted is currently paying each month;

RD:SSG:KML
11/17/2017

2.    The date of the most recent Rent increase to the Tenant who has received the Notice of Termination;

3.    The physical address of the Rent Stabilized Unit being vacated;

4.    The names of the Tenants being evicted; and

5.    Such other information as may be reasonably requested by the City.

C.    Notice of Re-Rental to the City.  Unless the Landlord is already obligated to re-register the Rent Stabilized Unit on vacancy or re-rental pursuant to the Regulations, once a Tenant Household has vacated a Rent Stabilized Unit, such Landlord shall be required to provide the Director with the following information in a form approved by the Director, subject to California Civil Code 1947.7, as amended:

1.    The amount of Rent that the subsequent Tenant is actually paying each month; and

2.    The physical address of the Rent Stabilized Unit; and

3.    The name, of each subsequent Tenant; and

4.    A copy of the written rental agreement (if any) between the Landlord and Tenant; and

5.    The reason the prior Tenant vacated the Rent Stabilized Unit, if known; and

6.    Such other information as may be reasonably requested by the City.

D.    Use of Personal Information.  Personally-identifying information about Tenants and Tenant Households received by the City pursuant to this Section shall be used for investigation and prosecution of violations of the Municipal Code or other

RD:SSG:KML
11/17/2017

applicable laws. Unless the City receives permission from such individuals, City staff shall not otherwise provide such information to third parties unless required to do so by law or court order. For so long as the City requires registry of rents and requires the Landlord to provide the name of present or former tenant, the following information, when required to be provided by and received from the Landlord is confidential and shall be treated as confidential information within the meaning of the Information Practices Act of 1977: the name of a present or former Tenant and any additional information provided concerning the Tenant.

E.    Each Violation a Separate Violation.  For purposes of assessing civil and criminal penalties, violations of the requirements set forth in this Section shall be considered separate violations of this Chapter.

**Part 7**

**Tenant Buyout Agreements**

**17.23.700  Purpose**

The purpose of this Part 7 is to increase the fairness of Buyout Offers and Agreements by requiring Landlords provide Tenants with a City Disclosure form, and permitting Tenants to rescind Buyout Agreements, provided certain conditions are met, within forty-five (45) days of executing the Buyout Agreement. An additional goal is for the City to obtain data relating to the prevalence of Buyout Agreements, so as to monitor the level of tenant displacement, and regulate compliance with the purposes of this Chapter.

**17.23.705  Tenant Buyout**

Subject to the requirements of Chapter 14 of the Regulations, a Landlord may negotiate with a Tenant to obtain a voluntary vacancy by agreement.

RD:SSG:KML
11/17/2017

**Part 8**
**Fair Return Standard**

**17.23.800  Purpose**

A Landlord may Petition for a Rent adjustment in order to obtain a fair return in the event that the other increases allowed pursuant to the Apartment Rent Ordinance do not provide a fair return. This Part sets forth the standards for determining whether or not a Landlord is obtaining a fair return and what Rent increase would be required to provide a fair return if a Landlord is obtaining less than a fair return.

**17.23.810  Fair Return Standard**

A.   Fair Return Standard.  A fair return is the Base Year Net Operating Income adjusted by the percentage increase in the Consumer Price Index since the Base Year. "Net Operating Income" is the Gross Income from a Covered Property net of Operating Expenses, as such amounts are calculated and adjusted pursuant to this Part. Debt service costs are not included in calculating Net Operating Income.

B.   Base Year.  The "Base Year" is the 2014 calendar year, provided that where the Rent for Rent Stabilized Units has been set in a prior fair return decision regarding a Petition pursuant to this Part, in which case the calendar year that was the Current Year in the prior determination may be used as the Base Year for the purposes of reviewing a subsequent fair return Petition.

C.   Current Year.  The Current Year is the most recent calendar year preceding the submission of a Petition pursuant to this Part.

D.   Calculation of Consumer Price Index.  The Consumer Price Index ("CPI-U") for the Base Year shall be 251.985, which equals the annual average for 2014 reported by the Bureau of Labor Statistics for the CPI-U index for all urban consumers for all items for the San Francisco-Oakland-San Jose area. The CPI-U for the Current

RD:SSG:KML
11/17/2017

Year shall be the annual average for the Current Year reported by the Bureau of Labor Statistics for the CPI-U index for all urban consumers for all items for the San Francisco-Oakland-San Jose area. In the event a successor index to the CPI-U index for all urban consumers for all items for the San Francisco-Oakland-San Jose area is established by the Bureau of Labor Statistics, this calculation method may be updated accordingly in the Regulations.

### 17.23.820  Calculations of Gross Income and Operating Expenses

A.    Calculation of Gross Income.  For the purposes of determining the Net Operating Income, Gross Income shall be the sum of the following:

1.    Rent, calculated on the basis of one hundred percent (100%) rental occupancy at the Rents in effect at the end of the Base Year or Current Year, as applicable; and

2.    Income from coin operated laundry facilities, vending machines and similar income; and

3.    Interest from security and cleaning deposits (except to the extent paid to Tenants); and

4.    All other income or consideration received or receivable in connection with the use or occupancy of the Rent Stabilized Units and the Covered Property.

B.    Adjustments of Gross Income.

1.    Vacancy and Unpaid Rent.  Rents shall be adjusted for uncollected rents due to vacancy and unpaid Rent to the extent such are reasonable and beyond the control of the Landlord.  Adjustments pursuant to this Section are subject to the limitation that the ratio of uncollected Rents due to vacancies and unpaid Rent in the Current Year shall not exceed the ratio in

RD:SSG:KML
11/17/2017

the Base Year, unless the Landlord can demonstrate that the higher ratio is reasonable, is not the outcome of asking Rents exceeding market rents, and will likely be reoccurring.

2. _Separately Charged Fees_. Gross Income shall be adjusted to include other fees and charges not included in Rent that are paid to the Landlord or Landlord's designee by Tenants. If the Landlord collects any fees or charges that are not allowed under the Apartment Rent Ordinance, this fact may be considered in the determination on the Petition. In no event shall the collection of unauthorized fees or charges in the Base Year or Current Year be applied so as to result in a Rent increase to the Tenant.

3. _Owner Occupied Rental Units or Rental Units Otherwise Not Rented at Market Levels_. If a Rent Stabilized Unit is not rented in an arm's length transaction during the Base Year or Current Year or a portion thereof, the potential market rental income for such Rent Stabilized Units shall be included in calculating adjustments to Gross Income, which income shall be estimated based on the Rents of comparable Rental Units on the Covered Property, or if there are no comparable Rental Units on the Covered Property, the current market rents of comparable Rental Units in the immediate area.

4. _Increases in Rent Based on Vacancy Decontrol_. The Rent of Rent Stabilized Units that received a Rent increase following a valid vacancy decontrol pursuant to California Civil Code Section 1954.53 at any time from the first date of the Petition's Current Year through the date of the last hearing on the Petition, shall be computed at the Rent Stabilized Unit's new Rent after vacancy, for all twelve (12) months of the Petition's Current Year. In addition, if the Rent Stabilized Unit is eligible for an Annual General Increase during any month of the Current Year, the general adjustment shall be included for such months.

RD:SSG:KML
11/17/2017

5.   Illegal or Uninhabitable Rentals during the Base Year.  If a Rent Stabilized Unit was rented in violation of the Municipal Code during the Base Year, the Base Year rent for that unit shall be established pursuant to Section 17.23.820.B.3, unless the Rent Stabilized Unit was uninhabitable in the Base Year.  If a Rent Stabilized Unit is uninhabitable in the Base Year, any adjustment to income shall be made in consideration of the duties of the Landlord under law and the purpose of this Chapter.

6.   Other Income in Violation of Municipal or State Law.  If not already accounted for as Rent, Gross Income shall be adjusted to include other income to a Landlord from renting a Rent Stabilized Unit in violation of the City's Short Term Rental Ordinance, Part 2.5 of Chapter 20.80, in violation of any other local or state law or regulation.  If the Landlord earns income in violation of the law, this fact may be considered in the determination on the Petition.  In no event shall the collection of unpermitted or illegal Rent or Gross Income in the Base Year or Current Year be applied so as to result in a Rent increase to a Tenant Household.

C.   Calculation of Operating Expenses.  For the purposes of determining Net Operating Income, Operating Expenses shall include the following expenses to the extent they are incurred in connection with the operation of the Covered Property:

1.   Annual fees assessed under Chapter 17.23 to the extent that they are not passed through to Tenants;

2.   Business license fees;

3.   Real property taxes;

4.   Utility costs paid by the Landlord to the extent that they are not passed through to Tenants;

RD:SSG:KML
11/17/2017

5.    Insurance;

6.    Normal and reasonable repair and maintenance expenses for one (1) or more Rental Units and the Covered Property.  Repair and maintenance expenses shall include, but not be limited to, building maintenance including carpentry, painting, plumbing and electrical work, supplies, equipment, refuse removal, security services or systems, cleaning, fumigation, landscaping, and repair or replacement of furnished appliances, drapes, and carpets;

7.    Reasonable management expenses (contracted or owner performed), including necessary and reasonable advertising, accounting, other managerial expense. Management expenses are presumed to be six percent (6%) of Gross Income, unless established otherwise. Management expenses in excess of eight percent (8%) of Gross Income are presumed to be unreasonable and shall not be allowed unless it is established that such expenses do not exceed those ordinarily charged by commercial management firms for similar residential properties;

8.    Attorneys' fees and costs that are:

    a.    Incurred in connection with successful good faith attempts to recover Rents owed or with successful unlawful detainer actions not in violation of applicable law, to the extent the same are not recovered from Tenants;

    b.    Legal expenses that are necessarily incurred in dealings with respect to the normal operation of the Rent Stabilized Units or Covered Property, to the extent such expenses are not recovered from adverse or other parties;

RD:SSG:KML
11/17/2017

    c.    Reasonable and necessary costs incurred in obtaining a Rent increase pursuant to this Chapter, including administrative or judicial proceedings in connection with this Chapter, except where the pass-through of such expenses would constitute a violation of public policy or would contravene the exclusion in Section 17.23.820.D.5.

    Any attorneys' fees and costs included in Operating Expenses pursuant to this Section shall be amortized over a period of five (5) years, unless it is demonstrated that an alternate amortization period would be more reasonable and more consistent with the purposes of this Chapter.

9.    Replacement of facilities, materials or equipment not included in Section 17.23.820.C.6 necessary to maintain the same level of services as previously provided, to the extent that they are not passed through to Tenants and subject to the condition that said expenses shall be amortized in accordance with the standards for Operating Expense amortization in the Regulations.

D.    <u>Exclusions from Operating Expenses</u>.  For the purposes of determining Net Operating Income, Operating Expenses shall not include:

1.    Avoidable and unnecessary expenses incurred during or since the Base Year including expenses for additional maintenance and repair work which would not have been necessary if the maintenance had not been unreasonably deferred by the Owner or a prior Owner;

2.    Debt service, including mortgage interest and principal payments and other expenses associated with obtaining debt services, including but not limited to appraisal and title insurance costs;

3.    Fees, other than fees expressly authorized by Section 17.23.820.C;

T-30318.003/ORD_30032.docx    34
Council Agenda: 11-14-17
Item No.:    4.5a

RD:SSG:KML
11/17/2017

4.    Penalties, fees or interest imposed for violation of this Chapter or any other law;

5.    Legal expenses excluded as set forth in this Chapter or the Regulations;

6.    Contributions to lobbying efforts or organizations which lobby on behalf of apartment owners on local, state or federal legislative issues;

7.    Depreciation;

8.    Any expenses for which the Landlord has been or was eligible for reimbursement by any rebate or discount, Security Deposit, insurance, judgment for damages, settlement or any other method or device;

9.    Any expense incurred in conjunction with the purchase, sale, lease (but not including individual rental agreements with Tenants) financing or re-financing of the building that contains the Rent Stabilized Units, including, but not limited to, loan fees, payments to real estate agents or brokers, appraisals, legal fees, accounting fees, etc.; and

10.   Any other expense that does not benefit the Covered Property, including, but not limited to, the cost of or forming a corporation, partnership or other entity or buying out a stockholder or partner of the Landlord.

E.    Adjustments to Operating Expenses.

1.    Interest Allowance for Amortized Expenses.  Allowances for amortized Operating Expenses shall include an interest allowance as provided in the Regulations.

2.    Adjustment of Unusually Low or High Expenses.  A claimed expense(s) for a particular type of Operating Expense shall be adjusted if the claimed expense(s) is:

RD:SSG:KML
11/17/2017

a.    Not representative of the annual recurring level of the expense; or

b.    In the case of Base Year expenses, not a reasonable representation of average expenditures for that item in the years preceding and following the Base Year; or

c.    In the case of Current Year expenses, is not a reasonable estimate of future recurring annual expenditures for that item.

Unusually high or low expenses in a particular year shall be adjusted to allow for a reasonable comparison between the annual recurring level of the expense(s) in the Base Year and the Current Year.  This adjustment may be made by using an average of the particular expense over a number of years or amortizing an amount that is above the average, or using an industry average or adjusting expense levels from other years by the CPI-U or by some other reasonable methodology.  In making such adjustments for specific items, the goal shall be to establish an amount for that particular Operating Expense that most reasonably serves the objectives of obtaining a reasonable comparison between the recurring level of expense(s) in the Base Year and the Current Year.

3.    Amortization of Non-recurring expenses. Non-recurring expenses which are "substantial" shall be amortized over a reasonable period.  For purposes of this paragraph, non-recurring expenses are substantial if they exceed one (1%) of the annual Rent (as determined pursuant to Section 17.23.820.A.1).

4.    Calculation of Management Expenses.   It shall be presumed that management expenses increased by the percentage increase in the CPI-U between the Base Year and the Current Year, unless the Landlord can demonstrate that the level of management services that are beneficial to the Tenants has increased.  A change from owner management in the Base

RD:SSG:KML
11/17/2017

Year to third party management in the Current Year, in itself, shall not be considered an increase in management services beneficial to the Tenants.

5.  Mixed Use Properties; Segregation of Expenses and Income.  If a portion of the Covered Property is not used as residential rental property with Rent Stabilized Units or includes units which are not rent stabilized, this must be declared in the Petition, and any Income and Operating Expenses must be fairly allocated, consistent with the purposes of this Chapter, between the other uses and the rent stabilized portion of the property covered by the Petition.

6.  Apportionment of Operating Expenses.  In the event that a particular Operating Expense covers several years of costs, the costs shall be fairly allocated to the year that they are attributable to, even if they were paid for in a different year.

### 17.23.830  Adjustment of Base Year Net Operating Income

A.  Presumption of Fair Return.  The Apartment Rent Ordinance presumes that the Landlord received a fair return in the Base Year.

B.  Rebutting the Presumption.  The presumption that the Landlord received a fair return in the Base Year based on reasonable expenses may be overcome by sufficient evidence showing that income was unusually low or expenses were unusually high for a particular Covered Property in the Base Year as described in this Part.

C.  Authority to Adjust Net Operating Income.  The Hearing Officer may adjust the Base Year Net Operating Income if the Hearing Officer finds:

1.  The Landlord's Operating Expenses in the Base Year were unusually high or low in comparison to other years due to unusual circumstances.  In such

RD:SSG:KML
11/17/2017

instances, adjustments may be made in calculating Operating Expenses so the Base Year Operating Expenses reflect average expenses for the Covered Property over a reasonable period of time. The Hearing Officer shall consider the following factors in making this finding:

a.   The Landlord made substantial Capital Improvements during the Base Year, which were not reflected in the Base Year rents;

b.   Substantial repairs exceeding one (1%) of the annual Rent (as determined pursuant to Section 17.23.820.A.1) were made due to damage caused by uninsured disaster or vandalism, provided that the property was not uninsured or unreasonably underinsured as determined by the Hearing Officer, which were not reflected in the Base Year rents;

c.   Maintenance and repair were below accepted standards or resulted from the unreasonable deferral of other repairs or work;

d.   Other expenses were unreasonably high or low, notwithstanding prudent business practice.

2.   The Landlord's Gross Income during the Base Year was unusually high or low. In such instances, adjustments may be made in calculating Gross Income consistent with the purposes of this Chapter. The Hearing Officer shall consider the following factors in making this finding:

a.   The Gross Income during the Base Year was unusually low because some Tenants had unusually low Rents for the quality, location, age, amenities and condition of the housing as compared to the Rent for comparable units without housing violations in the immediate area in which the Rent Stabilized Unit is located. In the event that a claim is made pursuant to this Section, the Landlord shall pay for an appraisal

RD:SSG:KML
11/17/2017

of Base Year rents for comparable buildings made by an appraiser selected by the City.  The appraisal, which shall be presented as evidence, shall be conducted in a manner consistent with the standards in the Regulations.

b.   The Gross Income during the Base Year was significantly lower than normal because of destruction of all or part of the premises and/or temporary eviction for construction or repairs;

c.   There was a special relationship between the Landlord and Tenant (such as a family relationship) resulting in abnormally low rent charges;

d.   The Rents had not been increased for five (5) years preceding the Base Year;

e.   The Tenant lawfully assumed maintenance responsibilities in exchange for low Rent increases or no Rent increases; or

f.   Other special circumstances which establish that the Rent was not set as the result of an arms-length transaction.

## 17.23.840   Establishment of Base Year Operating Expenses in the Absence of Expense Records

If Base Year Operating Expense information is unavailable, the Landlord shall submit a request to the City to accept the Petition without complete Base Year Operating Expense information in a manner consistent with the standards in the Regulations.  In the absence of Base Year Operating Expense information, it shall be presumed that Operating Expenses have increased by the same percentage as the CPI-U since the Base Year, except that data or rate information or other sources of cost information may be considered in estimating the level of particular Operating Expenses in the Base Year. Information on increases or decreases in costs between the Base Year and the Current

RD:SSG:KML
11/17/2017

Year may be introduced by the Landlord, Tenant or members of the Tenant Household, City staff, and/or the Hearing Officer.

### 17.23.845  Purchasers of Rent Stabilized Properties After the Base Year

If the Landlord can show that the Landlord purchased the Covered Property between January 2015 and May 2016 in an arm's length transaction, and that reasonable attempts were made to obtain the records regarding Gross Income from the prior owner, and no information on the Base Year Gross Income is available from Tenants or City Staff , the Landlord may request to the City to accept a Petition for an adjustment under Section 17.23.820 using the year of purchase as an Alternative Base Year, in which case, the provisions of Section 17.23.810 shall be adjusted accordingly.

### 17.23.850  Allocation of Rent Increases

Rent increases resulting from a Landlord Petition for fair return shall be allocated equally among all Rent Stabilized Units in the Covered Property; subject to the condition that the Hearing Officer, in the interests of justice, shall have the discretion to apportion the Rent increases in another manner necessary to ensure fairness.

### 17.23.860  Authority to Insure a Fair Return

If a court finds that a Landlord has been denied a fair return, notwithstanding any other provision in this Section, the Hearing Officer may provide for a Rent adjustment that is adequate to provide a fair return.

### 17.23.870  Landlords to Retain 2014 Records

Landlords are required to keep all financial records for 2014 which may be necessary for making a Net Operating Income determination.  Failure to retain such records of Base Year Operating Expenses may result in the loss of the ability to demonstrate the need for a fair return Rent increase after September 1, 2016.

RD:SSG:KML
11/17/2017

SECTION 2.   Chapter 17.23 of Title 17 of the San José Municipal Code is hereby amended by adding a Part to be numbered, entitled and to read as follows:

**Part 9**
**Rent Registry**

**17.23.900  Rent Registry**

A.      Rent Registration.  The procedures for registration shall be established in this Part and the Regulations.  All registration requirements are subject to California Civil Code Section 1947.7, as may be amended.  The Landlord shall complete and submit to the Director a registration for each Rent Stabilized Unit on a City approved form, annually unless some other interval is specified by the City in the Regulations.

B.      Copy of Registration to Tenant.  If requested by the City, each Landlord shall provide to an adult member of the Tenant Household of a Rent Stabilized Unit a true and correct copy of the completed registration form that pertains to their Rent Stabilized Unit within ten (10) days of submission to the Director.  The Landlord may redact any information that does not pertain to that Rent Stabilized Unit except the name and address of the Landlord.

C.      Regulations.  The Regulations adopted by the City Manager for the implementation and administration of this Chapter 17.23 may address the contents and submission of registrations, including deadline for submissions by Landlords.

D.      Implementation of an Alternate Registry Procedure.  Notwithstanding Section 17.23.900.A, the City Council by resolution may, at any time after the second annual registration cycle is complete, change to another interval for, or vacancy-based, registration.

RD:SSG:KML
11/17/2017

E.   <u>Landlord Tenant Collusion</u>.   It shall be a violation of this Chapter to report an amount of Rent for a Rent Stabilized Unit to the Director other than the actual amount paid by the Tenant Household for the use and occupancy of the Rent Stabilized Unit, or in the case of a Rental Voucher Unit, the sum of the rent paid by the Tenant and government agency.

F.   Upon failure to submit the registration or re-registration for a Rent Stabilized Unit required pursuant to the Regulations within thirty (30) days of the date the registration or re-registration is due, the Landlord shall pay a late registration fee as set forth in the schedule of fees adopted by resolution of the City Council.

RD:SSG:KML
11/17/2017

PASSED FOR PUBLICATION of title this 14th day of November, 2017, by the following vote:

AYES:             ARENAS, CARRASCO, DAVIS, DIEP, JONES, JIMENEZ,
                  NGUYEN, PERALEZ, ROCHA; LICCARDO.

NOES:             KHAMIS.

ABSENT:           NONE.

DISQUALIFIED:     NONE.

SAM LICCARDO
Mayor

ATTEST

TONI J. TABER, CMC
City Clerk

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "B"

RD:SSG:SSG
10/30/17

RES. NO. 78413

## RESOLUTION NO. 78413

**A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN JOSE ADOPTING REGULATIONS FOR THE IMPLEMENTATION OF THE APARTMENT RENT ORDINANCE PARTS 1-9 OF CHAPTER 17.23 OF TITLE 17 OF THE SAN JOSE MUNICIPAL CODE AND SUPERSEDING ALL PRIOR REGULATIONS ADOPTED IN CONNECTION WITH CHAPTER 17.23**

**WHEREAS,** on April 19, 2016, the Council of the City of San José ("City") considered changes to the San José Rental Dispute Mediation and Arbitration Ordinance, Chapter 17.23 of Title 17 of the San José Municipal Code and after extensive discussion and public comment, City Council directed staff to return with amendments making several permanent modifications to the Apartment Rent Ordinance, including lowering the 8% allowable rent increase to 5%, eliminating the debt-service pass-through provision, and implementing a rent registry; and

**WHEREAS,** on May 1, 2016, the City Council adopted the Interim Apartment Rent Ordinance ("Interim Ordinance") that became effective on June 17, 2016; and

**WHEREAS,** the adopted Interim Ordinance reduced the annual allowable rent increase on tenants from 8% to 5%, eliminated rent increases available through the pass-through provisions after September 1, 2016, and implemented a fair return petition process; and

**WHEREAS,** the Council approved amendments to the regulations for Chapter 17.23 adopted by Resolution 61114 to add a chapter implementing the fair return petition procedures; and

**WHEREAS,** the Council is now, concurrent with this resolution, considering the final amendments to Chapter 17.23 of Title 17 of the San José Municipal Code ("Apartment

RD:SSG:SSG
10/30/17

RES. NO. 78413

Rent Ordinance") that will replace the Interim Ordinance and the San José Rental Dispute Mediation and Arbitration Ordinance; and

**WHEREAS,** in connection with the adoption of the Apartment Rent Ordinance, the City desires to adopt regulations for the implementation of the Apartment Rent Ordinance, and supersede all of the previously adopted regulations that implemented the Interim Ordinance and the San José Rental Dispute Mediation and Arbitration Ordinance; and

**WHEREAS,** the City desires to approve regulations for implementation of the Apartment Rent Ordinance attached as **Exhibit A**, in order to provide the procedural direction needed for the Apartment Rent Ordinance, Parts 1-9 of Chapter 17.23 of Title 17 of the San José Municipal Code;

**NOW, THEREFORE,** BE IT RESOLVED BY THE COUNCIL OF THE CITY OF SAN JOSE THAT:

The attached regulations for the implementation of the Apartment Rent Ordinance, parts 1-9 of Chapter 17.23 of Title 17 of the San José Municipal Code superseding all previously adopted regulations for the implementation of Chapter 17.23 of Title 17 of the San José Municipal Code, as more specifically set forth in the memorandum of the Director of Housing dated November 3, 2017, are hereby approved.

RD:SSG:SSG
10/30/17

RES. NO. 78413

ADOPTED this 14th day of November, 2017, by the following vote:

AYES:            ARENAS, CARRASCO, DAVIS, DIEP, JONES, JIMENEZ,
                 NGUYEN, PERALEZ, ROCHA; LICCARDO.

NOES:            KHAMIS.

ABSENT:          NONE.

DISQUALIFIED:    NONE.

SAM LICCARDO
Mayor

ATTEST

TONI J. TABER, CMC
City Clerk

RD:SSG:SSG
10/30/17

RES. NO. 78413

Exhibit A

78413

# CITY OF SAN JOSE, CALIFORNIA

## REGULATIONS FOR

## CHAPTER 17.23 INCLUDING APARTMENT RENT ORDINANCE

## TABLE OF CONTENTS

Page

Chapter 1  TITLE, REPLACEMENT OF PRIOR REGULATIONS ....................................1

Chapter 2  DEFINITIONS.................................................................................................1

Chapter 3  GENERAL......................................................................................................3

3.01.      Covered Property ...........................................................................................3

3.02.      Amendment of Rental Agreement to Remove Housing Services........................3

3.03.      Summary of Petition Processes.........................................................................3

Chapter 4  REGISTRATION AND FEE............................................................................4

4.01.      Purpose...........................................................................................................4

4.02.      Annual Registration and Fee...........................................................................4

4.03.      Registration Fee Exemption.............................................................................4

4.04.      Processing Exemption Requests ......................................................................5

4.05       Contents of Registration Form.........................................................................5

Chapter 5  GENERALLY APPLICABLE PETITION AND RESPONSE PROCEDURE;
           HEARING OFFICER AND PETITION EXAMINER REQUIREMENTS .......6

5.01.      Petition Procedures .........................................................................................6

5.02.      Petitions Authorized........................................................................................6

5.03.      Petition Process; All Petitions.........................................................................7

5.04.      Burden of Proof...............................................................................................9

5.05.      Relief from Default. ........................................................................................9

Chapter 6  TENANT PETITIONS FOR IMPROPER RENT, IMPROPER PASS
           THROUGH OF CHARGES AND VIOLATIONS OF THE APARTMENT
           RENT ORDINANCE; ADMINISTRATIVE DECISIONS AUTHORIZED......9

6.01.      Applicability ...................................................................................................9

6.02.      Issuance of Administrative Decision. ...............................................................9

6.03.      Revisions to Administrative Decision ...............................................................9

6.04.      Appealing Administrative Decision to the Director ..........................................10

Chapter 7  TENANT PETITIONS FOR HOUSING SERVICES REDUCTIONS AND
           CODE VIOLATIONS; VOLUNTARY MEDIATION; HEARINGS
           AUTHORIZED...............................................................................................10

7.01.      Applicability ...................................................................................................10

7.02.      Housing Service Reductions and Code Violations .............................................10

7.03.      Basic Service Level.........................................................................................10

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

TABLE OF CONTENTS

Page

7.04.     Voluntary Mediation Hearing Process.................................................................12

7.05.     Hearing Authorized.............................................................................................13

7.06.     Proof of Service Reductions ...............................................................................13

7.07.     Determining Value of Housing Service Reductions............................................14

7.08.     Consequences of a Housing Service Reduction...................................................14

7.09.     Housing Code Violations ....................................................................................14

7.10.     Findings...............................................................................................................14

7.11.     Hearing Procedures.............................................................................................15

7.12.     Conduct of Hearing.............................................................................................15

7.13.     Decision ..............................................................................................................17

7.14.     Appealing Hearing Decision to the Director ......................................................18

Chapter 8   LANDLORD FAIR RETURN PETITIONS; HEARINGS AUTHORIZED ......18

8.01.     Applicability .......................................................................................................18

8.02.     Petitions and Notice............................................................................................19

8.03.     Pre-submittal Meeting.........................................................................................20

8.04.     Fair Return Hearings............................................................................................20

8.05.     Staff Report Regarding Fair Return ....................................................................21

8.06.     Conduct of Hearing.............................................................................................21

8.07.     Guidance for Substantive Determinations on Fair Return Petitions....................23

8.08.     Decision Time for Issuance .................................................................................24

8.09.     Appealing Hearing Decision to the Director .......................................................25

Chapter 9   LANDLORD PETITIONS FOR PASS THROUGH OF CHARGES FOR
            SPECIFIED CAPITAL IMPROVEMENTS; ADMINISTRATIVE DECISIONS
            AUTHORIZED..................................................................................................26

9.01.     Applicability .......................................................................................................26

9.02.     Petitions and Notice............................................................................................26

9.03.     Standards for Specified Capital Improvements Costs Pass Through...................27

9.04.     Banking of Annual General Increase...................................................................28

9.05.     Guidance for Substantive Determinations ..........................................................28

9.06.     Petition Examiner Administrative Decision; Notice............................................29

9.07.     Appeals ...............................................................................................................29

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

## TABLE OF CONTENTS

Page

9.08.    Hearing Procedures ................................................................................................30

9.09.    Conduct of Hearing. ..............................................................................................30

9.10.    Decision ..................................................................................................................32

9.11.    Hearing Officer Decision is Final ........................................................................33

Chapter 10 JOINT REQUESTS FOR ADDITIONAL HOUSING SERVICES ................33

10.01    Joint Petitions for One-Time Fee or Deposit Increase .........................................33

10.02    Joint Petitions for a Rent Increase Due to Additional Occupants ........................34

10.03    Joint Petitions for a Rent Increase Due to Additional Parking Space ..................34

Chapter 11 HEARING OFFICERS .................................................................................34

Chapter 12 ENFORCEMENT AND IMPLEMENTATION .............................................35

12.01.   Prevention ..............................................................................................................35

12.02.   Implementation ......................................................................................................36

12.03.   Appeal ....................................................................................................................36

Chapter 13 RESERVED ...................................................................................................36

Chapter 14 TENANT BUYOUT OFFERS AND AGREEMENTS .....................................36

14.01    City-Disclosure of Rights Form ...........................................................................36

14.02    Buyout Agreements ...............................................................................................37

14.03    Recession of Buyout Agreement ..........................................................................37

14.04    Filing requirements ...............................................................................................38

APPENDIX A - Capital Improvement Amortization Period in Years ....................................A-1

APPENDIX B - Specified Capital Improvements Amoritization Period In Years ...............B-1

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

Chapter 1

TITLE, REPLACEMENT OF PRIOR REGULATIONS

These Regulations are adopted pursuant to Section 17.23.040 of San José Municipal Code ("SJMC") Chapter 17.23. These Regulations wholly replace and supersede the Regulations approved by the City Council on January 17, 1989 by Resolution No. 61114, as amended.

Chapter 2

DEFINITIONS

2.01. This Chapter contains definitions of the more commonly used words and phrases found in these Regulations. Defined terms used in these Regulations that are not defined in the Regulations shall have the meaning ascribed to such terms in the Ordinance.

2.01.1 "Administrative Decision" means the initial decision on a Petition prepared by the Petition Examiner and distributed to the Parties.

2.01.2 "Base Year" shall have the meaning set forth in SJMC Section 17.23.115.

2.01.3 "Buyout Agreement" means a signed written agreement, resulting from the Buyout Offer, consistent with the requirements of Chapter 14 wherein the Landlord promises to provide consideration in exchange for the Tenant's agreement to voluntarily vacate the Rent Stabilized Unit.

2.01.4 "Buyout Offer" means a Landlord's offer to a Tenant to provide consideration in exchange for the Tenant's agreement to voluntarily vacate the Rent Stabilized Unit.

2.01.5 "Business Day" means any Day that San José City Hall is open for City business.

2.01.6 "Capital Improvements" shall have the meaning set forth in SJMC Section 17.23.120.

2.01.7 "Current Year" shall have the meaning set forth in SJMC Section 17.23.810.C.

2.01.8 "Day" means a calendar day.

2.01.9 "Decision" means a written decision by a Hearing Officer.

2.01.10 "Director" shall mean the City of San José's Director of Housing or his or her designee.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

2.01.11  "Hearing Officer" shall mean a person who conducts administrative hearings on Petitions submitted by Landlords or Tenants pursuant to the provisions of SJMC Chapter 17.23.

2.01.12  "Housing Service Reduction" shall mean a reduction in one or more Housing Services without a corresponding reduction in Rent.

2.01.13  "Landlord" shall have the meaning set forth in SJMC Section 17.23.140.

2.01.14  "Mail" shall mean to deposit in the U.S. Mail with first class postage prepaid, including but not limited to, deposit in a U.S. mail postal box. Program staff may also "mail" documents and notices by utilizing certified or registered mail or with commercial package or courier services, in which case an item is mailed when it is deposited with or in the drop box of the service. If a Landlord or Tenant, including parties to a petition or a Buyout Agreement have consented to notice by email and provided email addresses, notice may be given by email with such notice deemed complete at the time of the email is sent by electronic transmission.

2.01.15  "Ordinance" shall mean the Apartment Rent Ordinance, Parts 1 to 9, SJMC Chapter 17.23.

2.01.16  "Party" shall mean a Landlord or a Tenant who is either the petitioner or responding party to a Petition. "Parties" shall refer to all relevant parties to a Petition, including each responding party. A responding party is a Tenant or Tenant Household who may be impacted by a Landlord Petition, and is the Landlord who may be impacted by a Tenant Petition.

2.01.17  "Petition" shall mean a claim by a Landlord or a Tenant on a form approved by the Director that is filed pursuant to Section 5.03.1.

2.01.18  "Petition Examiner" shall mean a person who conducts administrative reviews of Petitions and issues Administrative Decisions on Petitions submitted by Landlords or Tenants pursuant to the provisions of SJMC Chapter 17.23. A Petition Examiner may be either an employee of the City of San José or a person under contract with the City.

2.01.19  "Program Staff" shall mean the employees of the City of San José who implement SJMC Chapter 17.23 and its regulations.

2.01.20  "Response" shall mean a response on a form approved by the Director filed by either a Landlord or a Tenant pursuant to Section 5.03.4.

2.01.21  "SJMC" shall mean San José Municipal Code.

2.01.22  "Specified Capital Improvement" shall mean those items set forth in Appendix B.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

Chapter 3

GENERAL

3.01.   Covered Property.  Property is covered if Program Staff determines that (a) a Residential Occupancy Permit is or should be required and (b) if the property is not exempted by definition.

3.02.   Amendment of Rental Agreement to Remove Housing Services.  In accordance with Chapter 7, a Tenant may submit a Petition regarding Housing Service Reductions.  During a Hearing on such a Petition, a Hearing Officer shall have the authority to determine whether the Housing Service Reduction impacts an essential or material term or condition of the rental agreement in a manner that constitutes a constructive eviction.  *No amendment of a rental agreement to remove Housing Services shall be effective unless the Tenant has received a Tenant Pre-Amendment Notice.*

3.03.   Summary of Petition Processes.  The following table summarizes the Petition and Hearing Processes authorized by these Regulations.

| Tenant Petitions | | Landlord Petitions | | Joint Petitions |
|---|---|---|---|---|
| *Chapter 6*<br><br>*Improper Rent, Improper Pass-Through; or Violation of ARO* | *Chapter 7*<br><br>*Housing Service Reductions or Housing Code Violations* | *Chapter 8*<br><br>*Fair Return* | *Chapter 9*<br><br>*Specified Capital Improvements* | *Chapter 10*<br><br>*Tenant Requests for Additional Housing Services* |
| Petition & Response | Petition & Response | Petition & Response | Petition | Petition & Response |
| | Voluntary Mediation (*Optional*) | | | |
| Petition Examiner Provides Administrative Decision | Hearing: Hearing Officer provides Hearing Decision | Hearing: Hearing Officer Provides Hearing Decision | Petition Examiner Provides Administrative Decision | Form Review and Approval/Denial |
| Appeal Administrative Decision to Director | Appeal Hearing Decision to Director | Appeal Hearing Decision to Director | Appeal Administrative Decision in Hearing; Hearing Officer Provides Final Decision | |

3

Chapter 4

REGISTRATION AND FEE

4.01.   Purpose.  The purpose of this Chapter 4 is to enable the City to monitor and control allowable rents as mandated by the Ordinance and to collect fees for the purpose of covering the cost of administering the Chapter. (SJMC Section 17.23.400)

4.02.   Annual Registration and Fee.

4.02.1  Mailing of Registration Forms.  The Director shall Mail an annual registration form and fee statement to each Landlord of a Rent Stabilized Unit in the City using the City's Code Enforcement database, currently referred to as AMANDA, or any successor database maintained by the City.  The failure of a Landlord to receive the registration form shall not excuse the Landlord's late filing of the registration form.  (SJMC Section 17.23.900)

4.02.2  Deadline for Submission of Registration Form and Fee.  Landlords shall complete and submit to the Director the registration form and the annual fee payment prior to the payment deadline identified in the fee statement.

4.02.3  Alternative Registration Cycle.  If the City Council authorizes a change from the annual registration cycle to an interval different from that of the fee statement, the completed registration forms shall be due to the Director on the date specified in the form, or if registration is due upon vacancy, within thirty (30) days of vacancy.

4.03.   Registration Fee Exemption.  Landlords may request an annual exemption from the fee required pursuant to SJMC Section 17.23.400 by completing and submitting annually a form to be provided by the Director no later than ten (10) Business Days before the deadline for the payment of the fee as shown on the fee statement.  Exemptions shall only be granted when one of the following circumstances has been adequately demonstrated:

4.03.1  Owner-occupied Units.  The form will require the Landlord to provide evidence that the unit is owner occupied by the Landlord, which can include but is not limited to voter registration information, utility bills, state-issued identification, or other information showing the unit is the Landlord's place of residence.  No person who claims a homeowner's property tax exemption in another location is eligible for an owner-occupied fee exemption. Only Landlords who are natural persons may receive this fee exemption.

4.03.2  Transient Occupancy Units.  The rental unit is used for transient accommodations (for periods of less than thirty (30) days) such as a hotel or guest house consistent with City ordinances.  The form will require the Landlord to provide evidence of transient occupancy, including the Transient Occupancy Registration Certificate and any other required permits. This exemption does not apply to short-term vacation rentals (e.g., AirBnB) since under Part 2.5 of Chapter 20.80, the Landlord may not use a Rent Stabilized Unit as a short-term vacation rental.

4.03.3  Affordable Rental Units.  The rental unit is an Affordable Rental Unit. The form will require the Landlord to provide evidence that the rental unit is an Affordable Rental Unit by providing copies of the recorded affordability restriction or government contract that applies to the unit, and if requested, a copy of the current rent roll showing the affordable rent.

4.03.4  Government Owned Units.  The rental unit is owned by a local, state or federal governmental agency.  The form will require the Landlord to provide recorded documents providing current proof of government ownership.

4.03.5  Other Exemptions.  The rental unit or accommodation is located within a hospital, convent, monastery, extended care facility, emergency residential shelter, residential service facility, nonprofit home for Senior Citizens (as defined in the Unruh Act, as may be amended), fraternity house, sorority house, or in dormitories owned and operated by an institution of higher education, a high school, or an elementary school. The form will require the Landlord to provide evidence establishing that the unit or accommodation is a permitted use within one of the aforementioned facilities, including but not limited to permits, licenses, and ownership documentation

4.04.  Processing Exemption Requests.  Program Staff shall act on all such requests for fee exemptions within sixty (60) days of receipt of such request form and shall provide a written decision to the Landlord.  The decision of the Program Staff may be appealed to the Director consistent with the procedures in Section 10.03.  The Landlord shall have the burden of proof with respect to any claimed exemption.  (SJMC Section 17.23.400)

4.05  Contents of Registration Form.  The registration form shall include the following information as of the date specified on the form:

     1.    The address of the Rent Stabilized Unit; and

     2.    The name and address of each person or entity that is the Landlord, or if more than one, each Landlord of the Rent Stabilized Unit; and

     3.    The occupancy status of the Rent Stabilized Unit and, if occupied, the commencement date of the current tenancy; and

     4.    History of the Rent charged for the use and occupancy of the Rent Stabilized Unit; and

     5.    The amount of security deposit charged at the inception of the tenancy.

     6.    Whether the Rent Stabilized Unit is sub-metered, master-metered, or unmetered.

     7.    The number of Tenants occupying the unit, and the Tenants' names.

     8.    Household Services that are being provided at the inception of the Tenancy.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

9.    The signature of the Landlord of the Rent Stabilized Unit affirming under penalty of perjury that the information provided in the annual registration is true and correct; and

10.    Such other information reasonably requested by the City.

Chapter 5

GENERALLY APPLICABLE PETITION AND RESPONSE PROCEDURE; HEARING OFFICER AND PETITION EXAMINER REQUIREMENTS

5.01.    Petition Procedures. The procedures set forth in this Chapter 5 shall apply to all Petitions. The subsequent Chapters of these Regulations address individualized requirements and procedures defined for each Petition type. Specifically, Chapter 6 addresses improper Rent or improper pass-through of charges and violations of the Apartment Rent Ordinance; Chapter 7 addresses Housing Service Reductions and violations of the City's Housing Code; Chapter 8 addresses fair return claims; Chapter 9 addresses the pass-through of Specified Capital Improvements; and Chapter 10 address requests for additional Housing Services.

5.02.    Petitions Authorized. Only the Petitions based on the grounds described below shall be accepted.

5.02.1 Tenant Petitions. A member of a Tenant Household may submit a Petition to the Director on any one or more of the following grounds:

a.    Improper Rent Increase or Pass-Through of a Charge. To allege excess Rent was charged or a pass-through of a charge that does not comply with the Apartment Rent Ordinance. (SJMC Section 17.23.350.A)

b.    Violation of Apartment Rent Ordinance. To allege any violation of the Apartment Rent Ordinance. (SJMC Section 17.23.350.A)

c.    Housing Services Reductions or Housing Code Violations. To allege a reduction of Housing Services or a violation of the City's Housing Code. (SJMC Section 17.23.350.A)

5.02.2 Landlord Petitions. Any Landlord whose Rent Stabilized Units are subject to the provisions of the Apartment Rent Ordinance and who seeks to increase the Rent of any Rent Stabilized Unit or Units by an amount above the Annual General Increase may submit a Petition to the Program Staff on any one or more of the following grounds:

a.    Fair Return. To allege that the Rent increase otherwise permitted by Apartment Rent Ordinance would not permit the Landlord a Fair Return. (SJMC Section 17.23.350.B)

b.    Specified Capital Improvements. To seek expedited approval to pass through all or a portion of the cost of a Specified Capital Improvement that is listed in Appendix B. (SJMC Section 17.23.320.B)

5.02.3 Joint Petition. the following petitions filed by the Tenant for increases may be filed with Landlord agreement.

a.    Requesting Additional Housing Services.  A Tenant Household that desires additional Housing Services and Landlord that desires additional funds to provide additional Housing Services may submit a joint Petition.  A Tenant Household, with Landlord's consent, may submit a Petition to make a payment of a one-time fee or increased security deposit to receive or be entitled to new or additional Housing Services. (SJMC Section 17.23.320.C).

b.    A Landlord and Tenant may file a petition for an increase in the Rent of up to five percent (5%) for an additional Tenant (other than the Tenant's spouse, domestic partner, parent, dependent or foster child, or minor in the Tenant's care). Such increases in the maximum allowable Rent, as adjusted, will terminate if the additional occupant leaves. (SJMC Section 17.23.350.C).

c.    A Landlord and Tenant may file a petition for an increase in the Rent of up to or an increase in the Rent of up to fifty dollars ($50) for a second parking space, where only one (1) space was provided under the original rental agreement. (SJMC Section 17.23.350.C).

5.03.   Petition Process; All Petitions.

5.03.1 Initial Petition.  Either a Landlord, member of a Tenant Household, or both may file a Petition with the Program Staff regarding a Rent Stabilized Unit on a form approved by the Director.  Prior to filing a petition under Section 5.02.01 or 5.02.02, the petitioner shall notify the relevant parties (as described in Section 5.03.01.a) of the petitioner's intent to file.  The Petition shall be accompanied by all required supporting documentation.  Upon receipt of the initial Petition, the Program Staff will review the Petition for completeness.

a.    Initial Notice to Parties.  Upon receipt of a Petition, the Program Staff shall Mail notice of the receipt of the Petition to the relevant parties as described below.  The notice shall be on a form approved by the Director.  The notice form shall provide information on where the Petition may be reviewed and summarize each Party's right to file a Response to the Petition, a separate Petition, or both.

i.    In the case of a Tenant Petition, notice shall be given to the Landlord, and the notice form shall include the requested rent decrease.

ii.    In the case of a Landlord Petition, notice shall be given to all Tenants in the building covered by the Petition, and the notice form shall include the requested rent increase.

iii.    In the case of a joint Petition by both a Landlord and Tenant, notice shall be given to each party affected by the joint Petition, and the notice form shall include the proposed amount of the one-time payment.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

iv.     In addition to the requirements set forth in 5.03, in the case where a Party files a Petition that applies to a Rental Voucher Unit, the petitioner shall adhere to the requirements set forth in SJMC 17.23.350.D.

b.     Incomplete Petitions.  If the Petition is incomplete, the Program Staff shall provide notice to the petitioner that the Petition is incomplete and provide a list of deficiencies in the Petition, and/or the supporting documentation, and shall hold the Petition for ten (10) Business Days after Mailing such notice.  The petitioner may add to, amend, or revise and re-submit the Petition to the Program Staff.

c.     Complete Petitions.  If the Petition is complete, then the Program Staff will Mail a complete Petition was received to the relevant parties described below.  The notice that a complete Petition was received shall identify the due date for the submission of a Response to the Petition.  In addition to Mailing a copy of the receipt of a complete Petition, the Program Staff may also provide a summary of the Petition and hearing process and a petition response form to the parties receiving notice.  A delay in providing a notice of whether or not the Petition is complete shall not be deemed a determination that the Petition is complete.

i.     In the case of a Tenant Petition, notice shall be given to the Landlord.

ii.     In the case of a Landlord Petition, notice shall be given to all Tenants in the building covered by the Petition.

iii.     In the case of a joint Petition by both a Landlord and Tenant, notice shall be given to each party affected by the joint Petition.

5.03.2  Notices.  The City shall Mail all notices, except as provided below.  It is presumed that a Petition or a Response to a Petition filed with Program Staff contains the correct address for notice, and that Mailed notices to such addresses are received three (3) calendar days (not including Sunday and federal holidays) after Mailing.  In the Petition or a response, the petitioning or responding party may provide an email address.  If a Party consents to receive notice via email, such notice shall be deemed received upon sending of the email to the address provided by the Party by the Program Staff.

5.03.3  Petition and Forms.  Petitions and forms shall be as prescribed by the Director with the approval of the City Attorney as to form.  The Petition forms may require that written statements be made under penalty of perjury.  Petition forms shall include a proxy form to be completed by either a Landlord or Tenant who is designating a proxy to act on his or her behalf for purposes of the Petition and Hearing process.  A proxy form may be revoked only in writing.

5.03.4  Response to Submitted Petition.  The responding party (a Tenant or Tenant Household responding to a Landlord Petition or the Landlord responding to a Tenant Petition) shall have thirty (30) days from the date of the Mailing of the notice that a complete

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

Petition was received to submit a Response to a Petition and any supporting documents. If the responding party provides a Response to the Petition, the Program Staff shall provide notice to the petitioner that a Response was received. This Section 5.03.4 shall not apply to Specified Capital Improvement Petitions; members of one or more Tenant Households may appeal an Administrative Decision for a Specified Capital Improvement Petition as described in Chapter 9.

5.04.   Burden of Proof.   Although each Petition shall be addressed in accordance with the procedures defined for each Petition type, as described in following Chapters of these Regulations, all Petitions are subject to the burden of proof described in this Section. The burden of proof shall be satisfied by providing sufficient evidence to demonstrate that the fact sought to be proven is more probable than some other fact (e.g. a preponderance of the evidence standard). The burden of proof to show that the Landlord is entitled to obtain a rent increase based on a fair return or a pass through of costs for a Specified Capital Improvement is on the Landlord. Tenants have the burden of proving the existence of Housing Service Reductions, and Housing Code violations, and other claimed violations of the Ordinance.

5.05.   Relief from Default.   The Hearing Officer may relieve any party from the failure to adequately state the party's claim prior to or during the first meeting upon a reasonable showing of mistake, fraud, inadvertence, or excusable neglect, upon such reasonable conditions' as may be determined by the Hearing Officer, including granting to the opposing party additional time to respond to any claim, addition to, or revision of, a claim filed pursuant to the relief so granted.

Chapter 6

TENANT PETITIONS FOR IMPROPER RENT, IMPROPER PASS THROUGH OF CHARGES AND VIOLATIONS OF THE APARTMENT RENT ORDINANCE; ADMINISTRATIVE DECISIONS AUTHORIZED

6.01.   Applicability.   The procedures set forth in this Chapter 6 apply to Tenant Petitions regarding a Rent increase or the pass through of a charge. They also apply to Tenant Petitions regarding violations of the Apartment Rent Ordinance.

6.02.   Issuance of Administrative Decision.   After reviewing the complete Petition and any Responses, the Petition Examiner shall either (a) provide an Administrative Decision to the Program Staff or (b) request that Program Staff schedule a hearing under Part 7 for the Petition and any Responses. The Administrative Decision shall be a tentative ruling and shall acknowledge each Petition, Response, and any relevant supporting documentation, as applicable. The Administrative Decision shall be made on a form that is approved by the Director. The Administrative Decision shall be provided by the Petition Examiner to the Program Staff within twenty (20) Business Days after the applicable deadline for submission of a Response. The Program Staff shall Mail the Administrative Decision on the Petition to the Parties.

6.03.   Revisions to Administrative Decision.   Each Party will have ten (10) days after the Administrative Decision is Mailed to comment on the Administrative Decision. The Petition Examiner may, in his or her sole discretion, revise or amend the Administrative Decision to

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

correct non-substantive errors (such as typographical errors, mathematical errors, etc.) or to address substantive omissions (such as a failure to address a claim raised in a Petition or Response), after reviewing any comments received from the Parties on the Administrative Decision. The Program Staff shall provide a copy of any revised Administrative Decision to all Parties no more than seven (7) days after the end of the comment period, or notify all Parties that the Administrative Decision will not be revised.

6.04.   Appealing Administrative Decision to the Director.  Any Party to a Petition may appeal the Administrative Decision, as it may be revised in accordance with section 6.03, to the Director on a form approved by the Director.  Any Party may appeal to the Director within thirty (30) days of the Mailing date of the revised Administrative Decision or notice that the Administrative Decision will not be revised.  If no Party appeals to the Director within thirty (30) days, the Administrative Decision will be considered a final Decision.  The Director's sole authority upon appeal of an Administrative Decision is to either affirm the Administrative Decision or remand the Administrative Decision to the Petition Examiner.  If the Director remands the Administrative Decision to the Petition Examiner, the Director's remand is limited to identifying specific sections of the Ordinance or Regulations, or specific issues that the Petition Examiner must address when drafting a reconsidered Administrative Decision.  A reconsidered Administrative Decision shall be a final Decision.

Chapter 7

TENANT PETITIONS FOR HOUSING SERVICES REDUCTIONS AND CODE VIOLATIONS; VOLUNTARY MEDIATION; HEARINGS AUTHORIZED

7.01.   Applicability.  The procedures set forth in this Chapter 7 apply to Tenant Petitions regarding Housing Service Reductions or Housing Code violations that consist of a breach of the warranty of habitability. In the event that Tenant Petitions are filed or submitted that contain claims under this Part and Part 6, they may be heard together consistent with the procedures in this Part.

7.02.   Housing Service Reductions and Code Violations.  A reduction in Housing Services that occurs without a corresponding decrease in Rent is equivalent to a Rent increase. Each Housing Service Reduction and Housing Code violation must be considered in any determination of what constitutes a reasonable Rent reduction, as applicable under the circumstances.  A Hearing Officer shall have the authority to determine whether the Housing Service Reduction impacts an essential or material term or condition of the rental agreement in a manner that constitutes a constructive eviction.

7.03.   Basic Service Level.

7.03.1 Definition.  The Landlord is required to furnish to the Tenant a basic level of Housing Services, herein called the "Basic Service Level". The Basic Service Level for a particular Housing Service for a particular Rental Unit is established by:

      a.    Civil Code Sections 1941.1 and 1941.2 and other applicable codes and statutes;

      b.    The Landlord's implied warranty of habitability;

      c.    Express or implied agreement between Landlord and Tenant;

      d.    The level of service consistent with subsections (a), (b), and (c) above and implied by:

      i.    The nature and quality of original construction of improvements, fixtures, and equipment;

      ii.    The age of the improvements, fixtures, and equipment;

      iii.    The condition of the improvements, fixtures, and equipment at the beginning of the applicable term of tenancy;

      iv.    The Landlord's policies of operation and maintenance, repair, and replacement communicated to the tenant at the beginning of the applicable term of tenancy.

      7.03.2 Housing Service Reductions. A Housing Service Reduction occurs when the Landlord has breached the obligation to furnish to the Tenant the Basic Service Level and the Tenant's usability of the Rent Stabilized Unit is thereby measurably reduced.

      7.03.3 Allegations of Housing Service Reductions. Tenants may Petition for a Rent adjustment by filing a Tenant Petition in the form provided by the City. The Tenant Petition shall include for each Housing Service Reduction alleged:

      a.    The prior level of service established as part of the Housing Services to be provided by the Landlord for the rental unit; and

      b.    The specific changes in the prior level of service comprising the alleged reduction in service; and

      c.    The date the service reduction was first noticed by the Tenant; and

      d.    The date the Tenant gave notice to the Landlord of the alleged service reduction, and whether the notice was given orally or in writing; and

      e.    The date the Tenant gave notice to the Landlord that the Tenant requested the alleged service reduction to be corrected, and whether the request was oral or in writing; and

      f.    When and how the Landlord responded to the Tenant's notice; and

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

g.      Whether the condition was improved or corrected and if so, when and how; and

h.      The status of the condition as of the date the Petition is signed by the Tenant.

7.04.   Voluntary Mediation Hearing Process. Prior to scheduling a hearing under Section 7.05, raised in a Tenant Petition for Housing Service Reductions or Housing Code violations, Program Staff shall offer a voluntary Mediation process to the parties.  If agreed to by both parties, a Mediation will be scheduled prior to any hearing process.

7.04.1 For purposes of this Section, "Mediation" means a meeting in which a Landlord and Tenant have the opportunity to communicate with a Mediator or Hearing Officer and each other in a face-to-face setting at a neutral location in order to resolve a rental housing dispute voluntarily under ground rules designed to protect the confidentiality and neutrality of the communications, and in the absence of a written voluntary agreement to make a determination regarding any claims under this Part 7.

7.04.2 Following the initial presentation, the Mediator will meet privately with each side to attempt to work out a voluntary agreement. Private sessions are not recorded and confidential information provided during them shall not be accepted and shall not be used in decision making by the Mediator.

7.04.3 If the parties arrive at a voluntary agreement which resolves the dispute, the Mediator will write that agreement on a City voluntary agreement form and witness the parties' signatures. Any voluntary agreement that includes a Tenant buyout must comply with the Buyout Agreement requirements in the Ordinance and these regulations.

7.04.4 After meeting in private session, the Mediator will meet with both parties together to sign any voluntary agreement or to provide an opportunity to present any additional evidence or testimony. Any voluntary agreement reached between the Parties shall be submitted in writing to the City and shall filed as the resolution of the petition(s).

7.04.5 "Mediator" means a Hearing Officer or a person who is certified to have completed at least forty (40) hours of basic mediation training, with subsequent advanced training, and who has also participated as a Mediator or co-Mediator in at least ten mediations conducted under the auspices of a recognized community or commercial mediation program, and is subject to Section 11.01.03A Mediator shall not own a real estate interest in rental property consisting of three (3) or more units; is not a Tenant of a Rent Stabilized Unit and may not be an employee or an officer of groups or organizations which have or are viewed by significant numbers of tenants or landlords as having taken advocacy positions in landlord/tenant matters..

7.04.6 The voluntary agreement may not require or allow an increase in Rent or a pass through not authorized under the Ordinance. If the voluntary agreement contains a section making a violation of the material terms subject to review by a Petition Examiner under the Ordinance and Regulations, a written claim of violation may be filed within ninety (90) days of

12

the date of its filing, provided that the party filing the claim has sent a written request to the violating party to perform one or more specific, material items to be performed under the voluntary agreement. The written claim must contain a copy of the request to the violating party and the party making the claim must send a copy to the violating party. If the Petition Examiner determines that a material term of the voluntary agreement has been violated and contacts with the violating party fail to resolve the issue, the Petition Examiner shall send the parties notice of breach and shall schedule a hearing under Section 7.05 on the grounds that the issues were not resolved by the voluntary Mediation.

 7.04.7  If a voluntary agreement is not possible, or if one of the parties does not agree to a voluntary agreement, the Hearing Officer will make a written decision regarding Housing Service Reductions or Housing Code violations, and any claims raised under Part 6. Appeals of the Hearing Officer's decision shall be filed in writing with the Director within seven (7) days of the issuance of the decision.

 7.05.  Hearing Authorized.  If voluntary Mediation does not result in a resolution of the issues raised in the Petition, or if the Parties opt not to participate in voluntary Mediation, then the Petition review process shall commence with a Hearing before a Hearing Officer in accordance with the procedures established below. Appeals pursuant to Section 7.04.7 shall commence with a Hearing before a Hearing Officer in accordance with the procedures established below. Additionally, if the hearing has been scheduled regarding a claim of breach of voluntary agreement, the Hearing Officer shall consider if the voluntary agreement which has been claimed to be broken, has been broken, and if so, may determine an equitable remedy which may compensate for the violation by increasing or decreasing the rent accordingly.

 7.06.  Proof of Service Reductions.  The burden of proof of each service reduction is on the person alleging the reduction. A service reduction for a particular service for a particular rental unit shall be proven as follows:

 7.06.1  The person alleging the service reduction shall prove:

 a.  The Basic Service Level for the particular Housing Service for the particular Rental Unit; and

 b.  The actual service level for the particular Housing Service for the particular Rental Unit; and

 c.  That the actual service level is, or was, materially lower than the Basic Service Level; and

 d.  That the Housing Service Reduction occurred within the twelve (12) month period immediately preceding the date of filing the petition commencing the proceeding in which the issue is being heard.

 7.06.2  The burden of proof shall be met by using evidence only which has a tendency in reason to prove or disprove a disputed fact of consequence in determining the Basic

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

Service Level, or in determining that the actual service level is materially lower than the Basic Service Level.

7.07.   Determining Value of Housing Service Reductions.   If the Hearing Officer finds that a Housing Service Reduction has occurred, the Hearing Officer shall determine the monetary value to be assigned to the service reduction by applying the following standards and procedures:

7.07.1 The Hearing Officer shall determine the percentage reduction in usability of the Rental Unit caused by the service reduction, commencing with the accrual date.

7.07.2 In determining the percentage reduction of usability, the Hearing Officer shall consider the following factors:

a.   The area affected;

b.   The amount of time the Tenant is exposed to the condition;

c.   The degree of discomfort the condition imposes;

d.   The extent to which such a condition causes a reasonable tenant to find the premises uninhabitable and leave; and

e.   Similar factors.

7.07.3 The Hearing Officer shall apply the percentage reduction to the monthly Rent, divide by thirty (30), and multiply the resulting sum by the number of days commencing from the accrual date to the date of restoration of the service reduction condition to the Basic Service Level, to determine the value of the service reduction.

7.08.   Consequences of a Housing Service Reduction.   The value of a Housing Service Reduction, as determined in accordance with these Regulations, shall be applied as a credit against the Tenant's obligation to pay Rent.

7.09.   Housing Code Violations.   Violations of Title 24 of the Municipal or of California Civil Code Sections 1941.1 and 1941.2 shall be considered by the Hearing Officer who may reasonably condition, disallow, or reduce Rent based on their severity.   An inspection report of a San José Code Enforcement Inspector shall be deemed presumptive, but not conclusive proof of the matters recited therein.

7.10.   Findings.   In making any determination that an alleged Housing Service Reduction exists, or has a particular monetary value, or that a Housing Code violation exists or not, or has a particular monetary value, any Decision shall make and include a specific finding of the facts upon which the determination is based.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

7.11.   Hearing Procedures.

7.11.1 Notice and Timing of Hearing.   Within thirty (30) days of a decision by one or more Parties to opt not to participate in voluntary Mediation or completion of voluntary Mediation without resolution, the Program Staff shall provide notice to all Parties of the date and time of the Hearing.  The date of the Hearing shall be scheduled for twenty (20) to thirty (30) days after completion of voluntary Mediation or the decision to opt not to participate in voluntary Mediation, a referral by a Petition Examiner under Section 6.02 or an appeal pursuant to Section 7.05.  Hearings shall be scheduled after 6:00 p.m. on weekdays, or at such other time as the Program Staff determines is feasible for Hearing Officers and as needed to allow Parties to participate.

7.11.2 Additional Submissions.   The Program Staff shall accept additional submissions of arguments and documentation regarding the claims raised in the Petition up to ten (10) days prior to the Hearing, so long as two (2) complete copies of the submission are provided to the Program Staff and a complete copy of the submission is provided by the submitting Party to all other responding and petitioning Parties.

7.11.3 Hearing Officer Assignments.   A Hearing Officer shall be assigned to preside over each Hearing.  The Hearing Officer shall have access to the Petition, any Response, and all supporting documentation prior to the Hearing.  The Hearing Officer shall accept argument from all Parties on the claims raised in the Petition, Response and any additional submissions, and review relevant supporting documentation.

7.11.4 Rescheduling or Alternate Scheduling of the Hearing. Requests for rescheduling of the Hearing will be considered if they are for reasons beyond the control of the requester and are received by Program Staff at least seven (7) days before the Hearing date. Additionally, requests for rescheduling based on a Party's medical emergency or similar significant conflicts may be allowed by Program Staff if they were clearly unforeseen upon documentation of the unforeseen event and the prompt notification of Program Staff.  Program Staff shall reschedule the Hearing with the originally assigned Hearing Officer unless that Hearing Officer is unavailable.

7.11.5 Effect of Failure to Appear. Failure to appear at the Hearing by the petitioner or the proxy designated in writing to act for the petitioner shall result in a determination by the Hearing Officer that the Petition has been withdrawn, and in that event notice shall be provided to the Parties of the withdrawal of the Petition.

7.12.   Conduct of Hearing.   The Hearing Officer shall control the conduct of the Hearing and rule on procedural requests.  The Hearing shall be conducted in the manner deemed by the Hearing Officer to be most suitable to secure that information and documentation which is necessary to render an informed decision, and to result in a fair decision without unnecessary delay.

7.12.2 Hearing Attendance.   The petitioners, any opposing parties, and each party's designated proxies, legal representatives, translators and non-party witnesses may attend

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

the Hearing.  The Hearing Officer may limit the attendance at the Hearing of persons not necessary for the proceedings.  There is no child care available and minors who are not witnesses should not be brought to the Hearing.

7.12.3  Ex Parte Communications.  There shall be no oral communication regarding the subject matter of the Petition outside the Hearing between the Hearing Officer and any party or witness (e.g. urgent scheduling issues or other non-substantive topics may be discussed *ex parte*).  All discussion during the Hearing shall be recorded.  Any written communication between or among the Hearing Officer and a Party after the Hearing has commenced shall be provided to all Parties, or if the Party has a proxy, to the proxy.

7.12.4  Records of Hearings.  Audio of Hearings will be recorded.  This record will be available to all Parties for review.  The Hearing Officer has the discretion to allow or disallow the making of other records or transcripts.

7.12.5  Order of Proceedings.  A Hearing shall ordinarily proceed in the following manner, unless the Hearing Officer determines that some other order of proceedings would better facilitate the Hearing:

a.  Submissions after Time Deadlines.  If a submission is proffered after the deadline in Section 7.11.2, the Hearing Officer may decline to accept the submission into the record unless all parties agree that the late submission is not prejudicial.

b.  Length of Hearing.  A Hearing schedule shall be established by the Hearing Officer providing for not more than seven (7) hours of Hearing testimony.  An extension of this time period may be granted by the Hearing Officer for just cause as determined by the Hearing Officer.  In no case may the Hearing last more than ten (10) hours unless the need for translation results in the need for a longer Hearing.

7.12.6  Right of Assistance.  All Parties to a Hearing shall have the right to seek assistance in developing their positions, preparing their statements, and presenting evidence from an attorney, tenant organization representative, landlord association representative, translator, or any other person designated by said parties to a Hearing.

7.12.7  Participation in Hearing.  Any Party, its designated proxy or its counsel may attend the hearing and offer evidence and testimony.  However, the Hearing Officer may adopt rules to encourage a timely and business-like hearing, such as requiring the Parties, rather than their counsel or other advisors, to be the primary speakers at Hearings, with adequate time given to consult with their counsel or advisor, or, with a large group encouraging representatives, if any, to be the primary spokespersons.

7.12.8  Participation of the Hearing Officer.  The Hearing Officer shall at all times in the conduct of the Hearing and in otherwise performing the duties of the Hearing Officer act neutrally and impartially as between the Landlord and the Tenants.

16

7.12.9 <u>Hearing Record</u>. The Hearing Officer shall maintain an official Hearing record, which shall constitute the exclusive record for decision. The Hearing record and decision shall include:

a. A copy of the Petition, Response, and any other documents submitted to support the petition;

b. Any written submissions by the parties,

c. All exhibits, papers, and documents offered either before or during the Hearing;

d. A list of participants present at the Hearing;

e. A summary of all testimony upon which the decision is based;

f. A statement of all materials officially noticed;

g. The appeal(s) of the Administrative Decision, if any;

h. The Hearing Officer's Decision;

i. All findings of fact and conclusions of law;

j. Any Administrative Decision provided to the Parties;

k. All recommended or final decisions, orders, or rulings; and

l. A recording of the Hearing in a format determined by the Director.

7.12.10 <u>Re-Opening of Hearing Record</u>. The Hearing Officer may re-open the Hearing record when she or he believes that further evidence should be considered to resolve a material issue, where the Hearing record has been closed and where a final Decision has not yet been issued by the Hearing Officer. In those circumstances, the Parties may waive further Hearing by agreeing in writing to allow additional exhibits into evidence.

7.13. <u>Decision</u>.

7.13.1 <u>Time for Issuance</u>. The Hearing Officer shall issue a written Decision to all Parties within thirty (30) days after the Hearing based on the arguments and supporting documentation available to the Hearing Officer. Prior to the issuance of the final Decision, the Hearing Officer may, at his or her discretion, prepare a tentative Decision and request the Program Staff to comment regarding clerical or mathematical errors and to circulate a tentative Decision to the Parties for comment regarding clerical or mathematical errors. All such comments shall be provided to the Hearing Officer and the other Parties in writing by the commenter within ten (10) days of receipt of the tentative Decision.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

7.13.2 <u>Decision Contents</u>. The Decision shall include findings of fact and conclusions of law which support the Decision, and shall specify the following:

      a.    The amount of change to the Rent, if any, for each unit.

      b.    In the case of a downward adjustment in the Rent, for each unit entitled to an adjustment; (a) an itemization of each reduction in Housing Services on which the reduction is based, the amount of reduction attributable to that Housing Service, and the duration of the adjustment; and (b) an itemization of each code violation on which the reduction is based, the amount of reduction attributable to that violation, and the duration of the adjustment.

      c.    Any conditions which are placed on the award including conditions and limitations imposed for violation of SJMC Chapter 17.23.

      d.    The date on which any adjustment to the rent is effective for each unit.

      e.    An explanation of the basis for the Decision with citations to the Ordinance.

      f.    The cover page of the decision will provide that the date the decision is issued is the date of Mailing.

7.13.3 <u>Applicability of Decision</u>. The Decision of a Hearing Officer shall not apply to a tenant who has not filed a Petition or has not been included in a Landlord's Petition.

7.14.    <u>Appealing Hearing Decision to the Director</u>. Any Party to a Hearing may appeal the Hearing Decision to the Director on a form approved by the Director. Any Party may appeal to the Director within thirty (30) days of the Mailing date of the Hearing Decision. If no Party appeals to the Director within thirty (30) days, the Hearing Decision will be considered a final Decision. The Director's sole authority upon appeal of a Hearing Decision is to either affirm the Hearing Decision or remand the Hearing Decision to the Hearing Officer for reconsideration. If the Director remands the Hearing Decision to the Hearing Officer, the Director's remand is limited to identifying specific sections of the Ordinance or Regulations, or specific issues that the Hearing Officer must address when drafting a reconsidered Hearing Decision. A reconsidered Hearing Decision shall be a final Decision.

Chapter 8

LANDLORD FAIR RETURN PETITIONS; HEARINGS AUTHORIZED

8.01.    <u>Applicability</u>. The procedures set forth in this Chapter 8 apply to Landlord Petitions requesting a Rent increase in order to obtain a fair return ("fair return Petition"). This Chapter 8 provides procedures and standards that apply in addition to the substantive fair return analytical requirements established in SJMC Chapter 17.23.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

8.02.   Petitions and Notice.  The following requirements and standards supplement the fair return petition process identified in SJMC Chapter 17.23.

8.02.1  Petition Filing Requirement.  A Landlord seeking a rent increase in excess of the amount allowed under SJMC Section 17.23.310 on fair return grounds must file a fair return Petition on a City petition form with all required supporting documentation. Documentation must be marked on each page with the specific petition form item it is intended to support. In the event of a petition with claims under SJMC Section 17.23.830.C, the landlord must also arrange for retaining the City selected appraiser prior to the scheduling of a hearing.

8.02.2  Supporting Evidence.  A Petition for a fair return must include at least three (3) sets of copies of all evidence the Landlord is relying on to support his or her claim, marked accordingly.  Receipts, cancelled checks, and detailed invoices are the best documentation.

a.   Tax returns and ledgers may be submitted as part of the supporting evidence, however, tax returns alone are not accepted as sufficient evidence for Current Year claims, or for any year less than three (3) years prior to the Current Year. Copies of contemporaneously prepared ledgers alone are not accepted as sufficient evidence for the Current Year.

b.   Evidence that may tend to show that rents were unusually low for the quality, location, age, amenities and condition of the housing includes but is not limited to evidence of rents collected in comparable buildings located in the same neighborhood.

c.   Evidence that may tend to show destruction or vandalism of the building or units includes contemporaneous insurance claims.

8.02.3  Petitions Without Complete Base Year Evidence.  In the event that a Petition that is otherwise complete does not include actual evidence of Base Year net operating expenses, the Landlord may submit a Director approved form requesting the Program to accept the Petition without the complete Base Year net operating expense evidence.  The request form will require an affidavit under penalty of perjury indicating that the Landlord does not have and cannot obtain this evidence, and a description of how this evidence was lost and may require a filing fee to cover the cost for Program Staff to investigate and prepare a report for the Hearing Officer.  Upon receipt of a complete request form, if the Program Staff has Mailed a notice of incomplete petition pursuant to Section 5.03.1 and all other portions of the Petition are complete, the Program Staff shall Mail a notice of complete Petition pursuant to Section 5.03.1.

8.02.4  Petitions Claiming that Base Year Gross Income is Unusually Low.

a.   Appraisal Requirement.  If the Landlord Petition claims that the Base Year Gross Income is unusually low because some Tenants had unusually low Rents for the quality, location, age, amenities and condition of the Rental Units as compared to Rents for comparable units, the Landlord shall be required to pay the costs of an appraisal determining the Base Year rents for comparable buildings at the time of, and as a condition to, filing a Petition.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

The City shall select the appraiser to prepare such appraisal and shall provide the appraiser with instructions on the scope of the appraisal which shall include Base Year rents for at least three comparable buildings containing Rent Stabilized Units located in the same neighborhood as the Covered Property for which the Petition has been submitted. The appraisal shall be prepared by an Appraisal Institute Certified Appraiser with experience appraising rental property in the City. The appraisal will fully explain the appraiser's determination of comparability and any adjustments made by the appraiser between the property that is the subject of the Petition and the comparable properties. (SJMC Section 17.23.830)

       b.   Exclusion from Claims of Unusually Low Base Year Gross Income. A property in which every Rent Stabilized Unit has been the subject of valid decontrol after the Base Year, in accordance with SJMC Section 17.23.300, is precluded from claiming that Base Year Gross Income was unusually low.

8.03.   Pre-submittal Meeting. The Director may, at his or her discretion, authorize Program Staff to hold an informational meeting with a Petitioner to for a fair return Petition (as described in Section 8.02.2 of these Regulations), upon submission of a fair return Petition and after Initial Notice to the Parties is provided in accordance with Section 5.03.1.a of these Regulations. No representation by Program Staff at such a meeting shall be binding on a Hearing Officer.

8.04.   Fair Return Hearings.

8.04.1  Program Staff shall assign a Hearing Officer, who shall hear the completed fair return Petition within forty (40) days of the Mailing of the notice of determination of completeness. The Hearing Officer may elect to hold a prehearing conference with the parties. In the event the Hearing Officer elects to hold a pre-hearing conference, the pre-hearing conference and hearing shall each be scheduled within forty (40) days of the Mailing of the notice of determination of completeness. Notice of the hearing date shall be sent to the landlord and tenants. The notice of the hearing date shall be Mailed at least two (2) weeks prior to the Hearing date.

8.04.2  Requests for rescheduling of the hearing will be considered if they are for reasons beyond the control of the requester and are received by program staff at least seven (7) days before the hearing date. Additionally, requests for rescheduling based on a party's medical emergency or similar significant conflicts may be allowed by Program Staff if they were clearly unforeseen upon documentation of the unforeseen event and the immediate notification of Program Staff.

8.04.3  Failure to appear by Landlord or a proxy designated in writing to act for Landlord shall result in a determination that the petition has been withdrawn.

8.04.4  Petition withdrawals must be made in writing and the reason for withdrawal provided. Program Staff will notify Tenants of the withdrawal of a Petition. A new Petition for a property that was the subject of a withdrawn Petition shall be heard by the previously assigned Hearing Officer, unless Program Staff determines that is not feasible.

20

8.05.   Staff Report Regarding Fair Return.  Prior to the Hearing, Program Staff shall prepare a staff report that includes the following information, as applicable:

8.05.1  a calculation of the allowable rent adjustment pursuant to the Fair Return Standard,

8.05.2  a breakdown of the Base Year and Current Year income and expense by category,

8.05.3  a computation of the percentage adjustment of the Base Year net operating income showing the steps underlying the calculation consistent with SJMC Section 17.23.830,

8.05.4  a list of all petitions filed for the property in the last twelve (12) months and any approved Petitions for Specified Capital Improvements,

8.05.5  a list of all unresolved City code violation complaints,

8.05.6  a listing of evidence of any violations of SJMC Chapter 17.23,

8.05.7  a listing of any income that may have been received in violation of Chapter 17.23, Part 2.5 of Chapter 20.80,

8.05.8  the names of the parties or proxies designated to receive Notice,

8.05.9  the list of any missing or otherwise incomplete items that was provided to the Petitioner, and

8.05.10  a summary of the petition and evidence submitted.

8.06.   Conduct of Hearing.

8.06.1  Hearing Officer.  The Hearing Officer shall control the conduct of the hearing and rule on procedural requests.  The Hearing shall be conducted in the manner deemed by the Hearing Officer to be most suitable to secure that information and documentation which is necessary to render an informed decision, and to result in a fair decision without unnecessary delay.

8.06.2  Hearing Attendance.  The petitioners, any opposing parties, and each party's designated proxies, legal representatives, translators and non-party witnesses may attend the Hearing.  The Hearing Officer may limit the attendance at the Hearing of persons not necessary for the proceedings.  There is no child care available and minors who are not witnesses should not be brought to the Hearing.

8.06.3  Ex Parte Communications.  There shall be no oral communication regarding the subject matter of the Petition outside the Hearing between the Hearing Officer and any party or witness, except at a prehearing conference, if any, to clarify and resolve issues (e.g. urgent scheduling issues or other non-substantive topics may be discussed *ex parte*).  All

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

discussion during the Hearing shall be recorded.  All written communication from the Hearing Officer to a party after the Hearing has commenced shall be provided consistent with Section 5.03.2 to all parties, or if the party has a proxy, to the proxy.

8.06.4  Records of Hearings.  Audio of Hearings will be recorded.  This record will be available to all parties for review.  The Hearing Officer has the discretion to allow or disallow the making of other records or transcripts.

8.06.5  Order of Proceedings. A hearing on a Petition shall ordinarily proceed in the following manner, unless the Hearing Officer determines that some other order of proceedings would better facilitate the hearing:

a.  Submissions after Time Deadlines.  If a submission is proffered after the later of the deadline in Section 7.11.2 or, the date for submissions set in the pre-hearing conference, if any, the Hearing Officer may decline to accept the submission into the record unless all parties agree that the late submission is not prejudicial.

b.  Length of Hearing.  A Hearing schedule shall be established by the Hearing Officer providing for not more than ten (10) hours of Hearing testimony.  An extension of this time period may be granted by the Hearing Officer for just cause as determined by the Hearing Officer.  Just cause may include but is not limited to Hearing a fair return Petition where the Base Year records are unavailable.

8.06.6  Right of Assistance.  All Parties to a Hearing shall have the right to seek assistance in developing their positions, preparing their statements, and presenting evidence from an attorney, tenant organization representative, landlord association representative, translator, or any other person designated by said parties to a Hearing.

8.06.7  Participation in Hearing.  Any Party, its designated proxy or its counsel may attend the hearing and offer evidence and testimony.  However, the Hearing Officer may adopt rules to encourage a timely and business-like hearing, such as requiring the Parties, rather than their counsel or other advisors, to be the primary speakers at Hearings, with adequate time given to consult with their counsel or advisor, or, with a large group encouraging representatives, if any, to be the primary spokespersons.

8.06.8  Participation of the Hearing Officer. The Hearing Officer shall at all times in the conduct of the Hearing and in otherwise performing the duties of the Hearing Officer act neutrally and impartially as between the Landlord and the Tenants.

8.06.9  Hearing Record. The Hearing Officer shall maintain an official Hearing record, which shall constitute the exclusive record for decision. The Hearing record and decision shall include:

a.  A copy of the Petition and documents submitted to support the petition;

b.  Any written submissions by the parties;

22

c.    All exhibits, papers, and documents offered either before or during the Hearing;

d.    A list of participants present at the Hearing;

e.    A summary of all testimony upon which the decision is based;

f.    A statement of all materials officially noticed;

g.    The appeal(s) of the Administrative Decision;

h.    The Hearing Officer's Decision;

i.    All findings of fact and conclusions of law;

j.    Any Administrative Decision provided to the Parties;

k.    All recommended or final decisions, orders, or rulings; and

l.    A recording of the Hearing in a format determined by the Director.

8.06.10    Re-Opening of Hearing Record. The Hearing Officer may re-open the Hearing record when she or he believes that further evidence should be considered to resolve a material issue, where the Hearing record has been closed and where a final Decision has not yet been issued by the Hearing Officer. In those circumstances, the Parties may waive further Hearing by agreeing in writing to allow additional exhibits into evidence.

8.07.    Guidance for Substantive Determinations on Fair Return Petitions. In addition to the standards identified in SJMC Chapter 17.23, the following guidance shall be incorporated by Hearing Officers when calculating gross income and operating expenses for purposes of identifying and maintaining net operating income.

8.07.1    Operating Expenses. In calculating Operating Expenses for the replacement of facilities, expenses for materials or major equipment necessary to maintain the same level of Housing Services as previously provided may be allowed, except insofar as such expenses are compensated by insurance proceeds or other sources or to the extent that such expenses have already been passed through to Tenants. Such expenses shall be limited to those actually incurred in the Base Year or in the Current Year. The amount expended shall be amortized according to the schedule attached as Appendix A, provided that the Hearing Officer may use seven (7) years for unlisted items, or such other period as is determined to be reasonable and consistent with the purposes of the Ordinance.

8.07.2    Reasonable Maintenance and Repair Expenses. Expenses for maintenance and repair are reasonable and normal where they are consistent within ten percent (10%) from year to year, or otherwise shown to be consistent with the annual recurring level of expenses. The Hearing Officer may also evaluate reasonableness by considering whether such expenses are in keeping with expenses for buildings of similar configuration and age.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

8.07.3 <u>Housing Service Reductions and Housing Code Violations</u>.  If applicable, any Housing Service Reductions and Housing Code violations must be considered in any determination of what constitutes a reasonable Rent increase.

8.07.4 <u>Reasonableness Generally</u>.  If the Petition Examiner or Hearing Officer determines that the variation or timing of expenses is not reasonable, then such expenses may be reallocated or amortized as the Hearing Officer determines to be consistent with the Ordinance.

Expenses should be documented by contemporaneous and complete invoices or other similar documents that identify the provider, cost, address of work, dates, and the nature of the work performed and be provided along with cancelled checks or other proof of payment thereof. Original documents are the best evidence, although all types of evidence may be submitted.

Expense claims based on cash payments or payments to affiliated entities must be documented to the satisfaction of the Petition Examiner or Hearing Officer.

8.07.5 <u>Interest Allowance for Amortized Expenses</u>.  The interest allowance for Operating Expenses required to be amortized in connection with a fair return Petition shall equal the interest rate equal to the prime rate as reported by the Wall Street Journal as of the date of the initial submission of the Petition, plus an additional two percent, to be taken as simple interest. (Section 17.23.820.E)

8.07.6 <u>Calculation of Base Year CPI-U</u>.  The Consumer Price Index For All Urban Consumers ("CPI-U") for the Base Year shall be 251.985.  (Section 17.23.810.D.)

8.07.7 <u>Calculation of Current Year CPI-U</u>.

a.      <u>Calendar Year</u>.  To determine the CPI-U for the Current Year when petitioner uses a calendar year for the Current Year, the CPI-U for the Current Year shall be the annual average for the Current Year reported by the Bureau of Labor Statistics for the CPI-U index for all urban consumers for all items for the San Francisco-Oakland-San Jose area. For example, the annual average CPI-U in 2016 for all urban consumers for all items for the San Francisco-Oakland-San José area is 266.344, which represents an increase from the Base Year of 14.359, or approximately 5.7%.

8.08.   <u>Decision Time for Issuance</u>.  The Hearing Officer shall issue a written Decision to all Parties within thirty (30) days after the Hearing based on the report by Program Staff and the arguments and supporting documentation available to the Hearing Officer.

8.08.1 <u>Decision Contents</u>.  The Decision shall include findings of fact and conclusions of law which support the Decision, and shall specify the following:

a.      a calculation of the allowable rent adjustment pursuant to the fair return standard,

b.      a breakdown of the base year and current year income and expense by category

24

c.      a computation of the percentage adjustment of the base year net operating income showing the steps underlying the calculation

d.      The amount of change to the Rent, if any, for each unit;

e.      Any conditions which are placed on the award including conditions and limitations imposed for violation of SJMC Chapter 17.23;

f.      The date on which any adjustment to the rent is effective for each unit;

g.      An explanation of the basis for the Decision with citations to the Ordinance, which must include:

i.      A calculation of the amount of change to the Rent pursuant to the fair return standard;

ii.     An itemization of Base Year and Current Year income and expenses by category;

iii.    A calculation of the percentage adjustment of the Base Year net operating income (including the steps underlying the calculation); and

h.      The cover page of the decision will provide that the date the decision is issued is the date of Mailing.

8.08.2  Applicability of Decision. The Decision of a Hearing Officer shall not apply to a Tenant who has not filed a Petition or has not been included in a Landlord's Petition.

8.08.3  Effective Date of Rent Adjustments. Unless otherwise set by the Hearing Officer, any rent increases allowed in a Decision shall not be effective until all of the following are completed: (a) the Landlord provides notice to the Tenant of such increase pursuant to Civil Code Section 827 and (b) twelve (12) months have passed since the last increase in the Tenant's Rent. In the event of a rent decrease, the Decision shall specify the effective date of the rent decrease.

8.09.   Appealing Hearing Decision to the Director. Any Party to a Hearing may appeal the Hearing Decision to the Director on a form approved by the Director. Any Party may appeal to the Director within thirty (30) days of the Mailing date of the Hearing Decision. If no Party appeals to the Director within thirty (30) days, the Hearing Decision will be considered a final Decision. The Director's sole authority upon appeal of a Hearing Decision is to either affirm the Hearing Decision or remand the Hearing Decision to the Hearing Officer. If the Director remands the Hearing Decision to the Hearing Officer, the Director remand is limited to identifying specific sections of the Ordinance or Regulations, or specific issues that the Hearing Officer must address when drafting a reconsidered Hearing Decision. A reconsidered Hearing Decision shall be a final Decision.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

Chapter 9

LANDLORD PETITIONS FOR PASS THROUGH OF CHARGES FOR SPECIFIED
CAPITAL IMPROVEMENTS; ADMINISTRATIVE DECISIONS AUTHORIZED

9.01.   Applicability.

9.01.1 Expedited Petition Process Authorized.  The procedures set forth in this
Chapter 9 create an expedited review of Specified Capital Improvement Petitions, by which
Landlords may obtain approval for a Specified Capital Improvement pass through.  This Chapter
does not preclude a Landlord from submitting a fair return Petition and including Specified
Capital Improvements within the fair return Petition, although any pass through awarded shall
also be considered in determination of a fair return.  Tenants are not entitled to submit a
Response to a Specified Capital Improvement Petition (as noted in Section 5.03.4 of these
Regulations) prior to issuance of an Administrative Decision; Tenants may appeal a Petition
Examiner's Administrative Decision as described in Section 9.08.

9.01.2 Properties Ineligible for Any Specified Capital Improvement Pass
Through.  No cost of a Specified Capital Improvement may be passed through to a Tenant of a
Rental Unit if any of the following conditions exists:

a.      The Rental Unit is in violation of the implied warranty of
habitability, including the interpretation of the implied warranty of habitability codified in
California Civil Code Section 1941.1, unless the Landlord can prove that such conditions were
caused by the Tenant occupying the Rental Unit at the time of the Petition.

b.      The Petition for Specified Capital Improvement Pass Through was
not filed within one-year of the completion of the Capital Improvement work.

c.      The work was performed without a City building permit.

9.02.   Petitions and Notice.

9.02.1 Petition Filing Requirements.  A Landlord seeking to pass through all or a
portion of costs for a Specified Capital Improvement may file a Specified Capital Improvement
Petition on a City petition form with all required supporting documentation. A Petition cannot be
filed until the work is completed. Supporting documentation must be marked on each page with
the specific petition form item it is intended to support. The Landlord must provide the
following information and supporting documentation as identified below:

a.      The type or form of Specified Capital Improvement(s) for which a
pass through is requested, identifying the applicable amortization period from Appendix B to
these Regulations;

b.      Whether a similar Housing Service was previously provided to one
or more Tenants to which the Landlord proposes to pass through costs of the Specified Capital

26

Improvement, and if so, a description of the existing Housing Service that was improved or increased by the Specified Capital Improvement;

        c.     The total cost of the Specified Capital Improvement to the Landlord together with the actual invoices and proof of payment;

        d.     The number of Rent Stabilized Units, the occupancy status of each Rent Stabilized Unit, and the Rent charged for each Rent Stabilized Unit that benefits from the Specified Capital Improvement;

        e.     The proposed pro rata, amortized cost of the Specified Capital Improvement to be passed through to each occupied Rent Stabilized Unit.

        f.     The date that the Specified Capital Improvement(s) was completed.

        g.     A copy of the building permit(s) and final inspection(s).

    9.03.    Standards for Specified Capital Improvements Costs Pass Through.

      9.03.1  Specified Capital Improvement Costs Passed Through Only To Benefitting Tenant Households.  No costs to construct or install a Specified Capital Improvement may be passed on to a Tenant Household unless the Tenant Household benefits from the Specified Capital Improvement. Improvements made to a building shall be considered to benefit all of the Tenants of the building. Improvements made only to a specific unit shall be considered to benefit the Tenant of that unit.

      9.03.2  Specified Capital Improvements, Categories.  A Specified Capital Improvement must fall into one of the following categories to be eligible for a pass through. Appendix B lists the categories that may apply for particular improvements. Improvements that are eligible for multiple categories must show that they are eligible for the specific category claimed.

        a.     Sustainability, Safety, and Seismic Improvements.  Up to one hundred percent (100%) of the costs of Specified Capital Improvements that materially improve sustainability (energy or water conservation), accessibility, safety, or seismic readiness. Specified Capital Improvements that materially improve sustainability, safety, or seismic readiness, are presumed to improve Housing Services and Housing Services functionality. With respect to energy conservation, material improvement for replacements of existing improvement may be shown by evidence that the replacement items exceed specifications of a basic replacement item and the specifications of the existing improvements. Where the City requires an engineered design for seismic work, the cost of the design work by the engineer or architect may be included in the cost to construct the improvements.

        b.     Major Systems Upgrades.  Up to one hundred percent (100%) of the costs of Specified Capital Improvements for major systems upgrades that provide new or enhanced housing services to Tenants, as identified in Appendix B, and add Housing Services or

enhance Housing Service functionality for Tenants. A Petition Examiner will not authorize any costs in a petition for Specified Capital Improvements to be passed through to a Tenant Household if the Specified Capital Improvement maintains a Housing Service for which a Tenant Household has previously bargained for and provided compensation, or that replaces the same functionality and features of existing Housing Services. A Landlord may petition for, and a Petition Examiner may grant in whole or in part, those costs of a Specified Capital Improvement that can be attributed to measurably improving upon or increasing the functionality or features of an existing Housing Service.

9.03.3  City Permit and Plans Review Cost. The pass-through permitted for costs may include up to one hundred percent (100%) of the cost charged by the City for review of the plans and issuance of the Building Permit.

9.03.4  Pro Rata Costs May Be Passed Through to Tenant. A Petition Examiner will determine the Tenant Household's pro rata share of the costs of a Specified Capital Improvement, with reference to the extent to the exclusive or shared nature of the benefits of the Specified Capital Improvement.

9.04.  Banking of Annual General Increase. The provisions allowing banking in Chapter 13 of the Regulations, if any, shall not apply to any unit subject to a Specified Capital Improvement pass through authorized by this Chapter.

9.05.  Guidance for Substantive Determinations. The Petition Examiner shall ascertain which category the alleged Specified Capital Improvement qualifies for, if any, which Tenants benefit from the Specified Capital Improvement, were actually incurred for the Specified Capital Improvement and to what extent the costs of the Specified Capital Improvement may be passed through to Tenants.

9.05.1  Administrative Decision. A Petition Examiner shall review each Specified Capital Improvement petition and provide a written decision addressing the following issues:

a.  Whether the alleged Specified Capital Improvement qualifies as a Specified Capital Improvement identified on Appendix B and whether it falls within one of the three categories identified in Section 9.03.2;

b.  Whether the Specified Capital Improvement is an improvement providing new or improved Housing Services intended to increase sustainability, safety or seismic readiness under Section 9.03.2(a); provides a wholly new Housing Service, or to what extent (percentage) the Specified Capital Improvement measurably improves upon or increases the functionality or features of an existing Housing Service under Section 9.03.2(b); or replaces major improvements so as to  maintain existing Housing Services under Section 9.03.2(c);

c.  What costs were incurred by the Landlord for the construction of the Specified Capital Improvement;

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

d.      The percentage and total cost of the Specified Capital Improvement that may be passed on to benefitting Tenants;

e.      The number of units, that benefit from the Specified Capital Improvement;

f.      The monthly cost of the Specified Capital Improvement per applicable unit and amortized over the applicable amortization period set forth in Appendix B, and subject to the limitations in SJMC Section 17.23.320.B and 17.23.330.

9.06.   Petition Examiner Administrative Decision; Notice.

9.06.1 Initial Circulation. Prior to the issuance of the final Administrative Decision, the Petition Examiner may, at his or her discretion, prepare a tentative Decision and circulate a tentative Decision to the Landlord for comment regarding clerical or mathematical errors. All such comments shall be provided to the Petition Examiner within ten (10) days of receipt of the tentative Decision.

9.06.2 Copy to Tenant Household. Upon receipt of an Administrative Decision that authorizes a pass through of Specified Capital Improvement costs to one (1) or more Tenants, a Landlord must provide a copy of the Administrative Decision with any initial written request for payment for the Specified Capital Improvement.

9.06.3 Notice Period. Each initial request for payment of an authorized Specified Capital Improvement cost pass through must provide the Tenant Household with no less than sixty (60) days' notice prior to due date of the first payment of the Specified Capital Improvement cost.

9.06.4 Pass Through Charges Separate from Rent. Because any authorized Specified Capital Improvement cost pass through is separate from Rent, such requests for payment are not subject to the limitation of one (1) Rent increase in a twelve-month period included in Ordinance Section 17.23.310.D. Any pass through charge shall be invoiced with and collected at the same time as the Rent.

9.07.   Appeals.

9.07.1 After the Administrative Decision has been issued, Tenants may appeal a by requesting a Hearing on a form approved by the Director. If no Tenant files an appeal within thirty (30) days of the date the City Mails the Administrative Decision, the Administrative Decision shall be final. The appeal must be based on one (1) or more of the following grounds: (a) the improvements were not correctly completed (b) the improvements were not as described in the petition or (c) the pass through cannot be charged to the Tenant because the implied warranty of habitability has been breached with respect to the Tenant's unit.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

9.08.   Hearing Procedures.

      9.08.1  Notice and Timing of Hearing.  Within thirty (30) days of receipt of a Tenant appeal of a Petition Examiner's Administrative Decision, the Program Staff shall assign a Hearing Officer to hear the appeal(s). Program staff shall schedule a Hearing and provide notice to all Parties of the date and time of the Hearing.  Hearings shall be scheduled after 6:00 p.m. on weekdays, or at such other time as the Program Staff determines is feasible for Hearing Officers and as needed to allow Parties to participate.

      9.08.2  Additional Submissions.  The Program Staff shall accept additional submissions of arguments and documentation regarding the appeal of the Administrative Decision up to ten (10) days prior to the Hearing, so long as two (2) complete copies of the submission are provided to the Program Staff and a complete copy of the submission is provided by the submitting Party to all other responding and petitioning Parties.

      9.08.3  Hearing Officer Assignments.  A Hearing Officer shall be assigned to preside over each Hearing.  The Hearing Officer shall have access to the Administrative Decision, the Petition, any Response, and all supporting documentation prior to the Hearing. The Hearing Officer shall accept argument from all Parties on the claims raised in the appeal, the Petition, Response and any additional submissions, and review relevant supporting documentation.

      9.08.4  Rescheduling or Alternate Scheduling of the Hearing. Requests for rescheduling of the Hearing will be considered if they are for reasons beyond the control of the requester and are received by Program Staff at least seven (7) days before the Hearing date. Additionally, requests for rescheduling based on a Party's medical emergency or similar significant conflicts may be allowed by Program Staff if they were clearly unforeseen upon documentation of the unforeseen event and the prompt notification of Program Staff.  Program Staff shall reschedule the Hearing with the originally assigned Hearing Officer unless that Hearing Officer is unavailable.

      9.08.5  Effect of Failure to Appear. Failure to appear at the Hearing by the Party that submitted the appeal, or the proxy designated in writing to act for the appellant, shall result in a determination by the Hearing Officer that the appeal has been withdrawn, and in that event the Administrative Decision shall be a final Decision.

    9.09.   Conduct of Hearing.  The Hearing Officer shall control the conduct of the Hearing and rule on procedural requests.  The Hearing shall be conducted in the manner deemed by the Hearing Officer to be most suitable to secure that information and documentation which is necessary to render an informed decision, and to result in a fair decision without unnecessary delay.

      9.09.1  Hearing Attendance.  The petitioners, any opposing parties, and each party's designated proxies, legal representatives, translators and non-party witnesses may attend the Hearing.  The Hearing Officer may limit the attendance at the Hearing of persons not

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

necessary for the proceedings. There is no child care available and minors who are not witnesses should not be brought to the Hearing.

9.09.2 Ex Parte Communications. There shall be no communication regarding the subject matter of the Petition outside the Hearing between the Hearing Officer and any party or witness. Provided, urgent scheduling issues or similar non-substantive topics may be discussed *ex parte* where necessary. All discussion during the Hearing shall be recorded. Any written communication between or among the Hearing Officer and a Party after the Hearing has commenced shall be provided to all Parties, or if the Party has a proxy, to the proxy.

9.09.3 Records of Hearings. Audio of Hearings will be recorded. This record will be available to all Parties for review. The Hearing Officer has the discretion to allow or disallow the making of other records or transcripts.

9.09.4 Order of Proceedings. A Hearing shall ordinarily proceed in the following manner, unless the Hearing Officer determines that some other order of proceedings would better facilitate the hearing:

a. Submissions after Time Deadlines. If a submission is proffered after the deadline in Section 9.08.2, the Hearing Officer may decline to accept the submission into the record unless all parties agree that the late submission is not prejudicial.

b. Length of Hearing. A Hearing schedule shall be established by the Hearing Officer providing for not more than seven (7) hours of Hearing testimony. An extension of this time period may be granted by the Hearing Officer for just cause as determined by the Hearing Officer. In no case may the Hearing last more than ten (10) hours unless the need for translation results in the need for a longer Hearing.

9.09.5 Right of Assistance. All Parties to a Hearing shall have the right to seek assistance in developing their positions, preparing their statements, and presenting evidence from an attorney, tenant organization representative, landlord association representative, translator, or any other person designated by said parties to a Hearing.

9.09.6 Participation in Hearing. Any Party, its designated proxy or its counsel may attend the hearing and offer evidence and testimony. However, the Hearing Officer may adopt rules to encourage a timely and business-like hearing, such as requiring the Parties, rather than their counsel or other advisors, to be the primary speakers at Hearings, with adequate time given to consult with their counsel or advisor, or, with a large group encouraging representatives, if any, to be the primary spokespersons.

9.09.7 Participation of the Hearing Officer. The Hearing Officer shall at all times in the conduct of the Hearing and in otherwise performing the duties of the Hearing Officer act neutrally and impartially as between the Landlord and the Tenants.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

9.09.8 <u>Hearing Record</u>. The Hearing Officer shall maintain an official Hearing record, which shall constitute the exclusive record for decision. The Hearing record and decision shall include:

a.   A copy of the Petition, Response, and any other documents submitted to support the petition;

b.   Any written submissions by the parties,

c.   All exhibits, papers, and documents offered either before or during the Hearing;

d.   A list of participants present at the Hearing;

e.   A summary of all testimony upon which the decision is based;

f.   A statement of all materials officially noticed;

g.   The appeal(s) of the Administrative Decision;

h.   The Hearing Officer's Decision;

i.   All findings of fact and conclusions of law;

j.   Any Administrative Decision provided to the Parties;

k.   All recommended or final decisions, orders, or rulings; and

l.   A recording of the Hearing in a format determined by the Director.

9.09.9 <u>Re-Opening of Hearing Record</u>. The Hearing Officer may re-open the Hearing record when she or he believes that further evidence should be considered to resolve a material issue, where the Hearing record has been closed and where a final Decision has not yet been issued by the Hearing Officer. In those circumstances, the Parties may waive further Hearing by agreeing in writing to allow additional exhibits into evidence.

9.10. <u>Decision</u>.

9.10.1 <u>Time for Issuance</u>. The Hearing Officer shall issue a written Decision to all Parties within thirty (30) days after the Hearing based on the arguments and supporting documentation available to the Hearing Officer. Prior to the issuance of the final Decision, the Hearing Officer may, at his or her discretion, prepare a tentative Decision and request the Program Staff to comment regarding clerical or mathematical errors and to circulate a tentative Decision to the Parties for comment regarding clerical or mathematical errors. All such comments shall be provided to the Hearing Officer and the other Parties in writing by the commenter within ten (10) days of receipt of the tentative Decision.

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)

9.10.2  Decision Contents. The Decision shall include findings of fact and conclusions of law which support the Decision, and shall specify the following:

a.      The amount of change to the Rent, if any, for each unit.

b.      Any conditions which are placed on the award including conditions and limitations imposed for violation of SJMC Chapter 17.23.

c.      The date on which any adjustment to the rent is effective for each unit.

d.      An explanation of the basis for the Decision with citations to the Ordinance, including:

i.      an itemization of each Specified Capital Improvement from which the Tenant Household benefits and on which the adjustment is based;

ii.      the amount of the adjustment attributable to each Specified Capital Improvement; and

iii.      the duration of the adjustment based on the amortization schedule identified in Appendix B.

e.·     The cover page of the decision will provide that the date the decision is issued is the date of Mailing.

9.10.3  Applicability of Decision. The Decision of a Hearing Officer shall not apply to a Tenant who has not filed a Petition and has not been included in a Landlord's Petition.

9.11.   Hearing Officer Decision is Final.  The Decision of a Hearing Officer upon an appeal of a Petition Examiner's Administrative Decision is final.

## Chapter 10

## JOINT REQUESTS FOR ADDITIONAL HOUSING SERVICES

10.01   Joint Petitions for One-Time Fee or Deposit Increase. Tenants may file petitions jointly with their Landlord requesting certain new or additional Housing Services listed in Section 10.01.1 in exchange for the payment of a one-time fee that does not exceed five percent (5%) of the Tenant's then-current monthly Rent or payment of additional Security Deposit, provided the total Security Deposit will not to exceed the limits in California Civil Code Section 1950.5.  Such Petitions shall be made on forms provided by the Director, and Program Staff shall have the authority to approve or deny such joint Petitions; provided, however, that Program Staff shall only deny a Petition for additional Housing Services upon making the finding that either the Tenant or the Landlord have not freely consented to the request, e.g., in situations with evidence of duress, misrepresentation, or other acts of misconduct.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

10.01.1 <u>New or Additional Housing Services</u>. A new or additional service may include a pet, where pets were prohibited or limited under the rental agreement. Additionally, other privileges or services that were expressly excluded or prohibited by the Tenant's written rental agreement may constitute a new or additional housing service, except for those services that include additional occupants, additional parking, or other services that are a component of the Basic Service Level.

10.02   <u>Joint Petitions for a Rent Increase Due to Additional Occupants</u>. A Landlord and Tenant may file a petition for an increase in the Rent of up to five percent (5%) for an additional Tenant (other than the Tenant's spouse, parent, dependent or foster child or minor in the Tenant's care). Such increase shall terminate in the event the additional Tenant vacates the unit.

10.03   <u>Joint Petitions for a Rent Increase Due to Additional Parking Space</u>. A Landlord and Tenant may file a petition for an increase in the Rent of up to fifty dollars ($50) for a second parking space. Where the Covered Property contains or is required to contain enough parking for each rent stabilized unit to have one space, one parking space shall be part of the Basic Service Level. The second space in the petition may not be the first space needed for another unit's Basic Service Level or a space required for guest parking by the Covered Property's permit.

Chapter 11

HEARING OFFICERS

11.01.1        <u>Designation of Hearing Officers</u>.  Hearing Officers are those individuals who, having met the criteria established in these Regulations, are acting under a contract with the City of San José, and also those Program Staff designated as Hearing Officers for specific purposes.

11.01.2        <u>Selection Criteria</u>. Hearing Officers must meet the following minimum criteria:

a.        Be a member of the California Bar or a nationally recognized arbitration association, such as the American Association of Arbitrators;

b.        Have successfully performed mediations, arbitrations, or hearings similar to those of this program;

c.        Have successfully mediated, arbitrated, or adjudicated rental disputes or have had other experience or training showing the capability to deal with the issues which are found in rental dispute hearings in this program;

d.        Shall not own a real estate interest in rental property consisting of three or more units;

e.        May not be an employee or an officer of groups or organizations which have or are viewed by significant numbers of tenants or landlords as having taken advocacy positions in landlord/tenant matters.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

11.01.3     Disqualification from Cases.  A Hearing Officer or Mediator shall disqualify himself or herself from hearing a case and can be disqualified by Program Staff at the request of one (1) of the Parties if:

a.     The Hearing Officer knows or has reason to know he or she has a financial interest affected by the determination or award;

b.     The Hearing Officer is related to one of the Parties or their representatives to the third degree;

c.     The Hearing Officer has been retained or employed by one of the Parties within the past two (2) years, or has given advice to one of the Parties relative to the issues involved in the hearing;

d.     It appears probable that the Hearing Officer by reason of bias or prejudice cannot provide a fair and impartial hearing;

e.     The Hearing Officer is a party to the hearing.

A Hearing Officer is not disqualified from hearing a case where one or more of the Parties have appeared before the Hearing Officer in an earlier Hearing. The Parties may waive their right to the disqualification of a Hearing Officer by a written statement accepting the Hearing Officer's services.

11.01.4     Review of Hearing Officers' Performance. The Program Staff will periodically review the performance of Hearing Officers and Mediators, will schedule Hearing Officer training and will inform the Director of the execution and termination of Hearing Officer contracts.

11.01.5     Petition Examiners. The Director's designees are designated as Petition Examiners and any Hearing Officer may serve as a Petition Examiner, provided that he or she may not hold the Hearing in the event his or her Administrative Decision is appealed.

Chapter 12

ENFORCEMENT AND IMPLEMENTATION

This chapter deals with those actions of the City taken in prosecuting misdemeanor violations of the Ordinance.  Tenants have, under the Enforcement Section of the Ordinance, additional civil rights not covered by this chapter.  This chapter also deals with implementation and administrative appeals.

12.01. Prevention. When complaints are received of an alleged violation which has not yet occurred or is in the process of occurring, Program Staff may attempt to prevent the potential violation by making contact with the Landlord or Tenant as applicable.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

12.02.  Implementation. The City Manager, Director of Department of Housing and their designees have the responsibility of implementing these regulations unless otherwise indicated.

12.03.  Appeal. Administrative actions by Program Staff may be appealed to the Director of the Department of Housing.

Chapter 13

RESERVED

Chapter 14

TENANT BUYOUT OFFERS AND AGREEMENTS

14.01.  City-Disclosure of Rights Form.  Immediately prior to making a Buyout Offer, the Landlord shall provide the Tenants with a City Disclosure Form, which shall include the following information:

a.      A statement explaining that the unit is subject to the Apartment Rent Ordinance and Tenant Protection Ordinance and providing contact information for the Program.

b.      A statement explaining that Tenants may request the Landlord provide a copy of the  Buyout Agreement in the Tenant's primary language and a box that the Tenant can complete to make such a request.

c.      A statement explaining that the Tenant has the right to not enter into a Buyout Agreement.

d.      A statement explaining that the Tenant has the right to seek an attorney prior to and during negotiations for a Buyout Agreement.

e.      A statement explaining that the Tenant has the right to provide counter offers and engage in counter negotiations with the Landlord.

f.      A statement explaining that the Tenant has the right to cancel any Buyout Agreement within forty-five (45) days of the date of the execution of the Buyout Agreement, without penalty.

g.      A statement explaining that exercising the right to rescind after vacating the unit, will not entitle a Tenant to move back into the unit.

h.      A statement that some types of termination of tenancy may entitle the Tenant to relocation benefits and that the Tenant may contact Program Staff for more information.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

           i.        Any other statements that are consistent with the implementation of Part 7 of the Apartment Rent Ordinance.

           j.        A space for each Landlord and Tenant to sign and date.

    14.02.  **Buyout Agreement.**  All Buyout Agreements shall be written and signed by both the Landlord and all involved Tenants. If requested, the Landlord shall provide the Tenant a translated Buyout Agreement or a translated copy of the Buyout Agreement in the Tenant's primary language. The Buyout Agreement shall include the following statements, which are to be written in at least 12pt Bold Font:

           a.        You have the right not to enter into this Buyout Agreement.

           b.        You may choose to speak with an attorney before signing this agreement.

           c.        You may also contact the City Housing Department prior to signing this agreement.

           d.        You have the right to cancel any Buyout Agreement within forty-five (45) days from the date of signing this Buyout Agreement without penalty. To cancel this agreement, you must send, via U.S. mail, the Landlord a signed and dated notice indicating that you are cancelling the agreement, or words to that effect. However, if you have already moved out, cancelling this Buyout Agreement will not entitle you to move back in.

Upon execution of the Buyout Agreement, the Landlord must provide all Tenant signatories an executed copy of the Buyout Agreement.

    14.03.  **Rescission of Buyout Agreement.**  The Tenant has the right to rescind a signed Buyout Agreement without penalty, if one (1) of the following conditions are met:

           a.        Forty-five (45) days have not passed from the date the Landlord and Tenant signed the Buyout Agreement; or

           b.        The Landlord failed to comply with the Buyout Offer requirements as set forth in Section 14.01 of this section; or

           c.        The Landlord failed to comply with the Buyout Agreement requirements set forth in Section 14.02 and/or Section 14.04 of this section; or

           d.        Any other circumstances under State and/or Federal law that would permit the rescission of a contractual agreement.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

All rescissions must be Mailed to the Landlord and must include a statement that the Tenant has rescinded the Buyout Agreement.  Where a Tenant successfully rescinds a Buyout Agreement, a remedy shall not include displacing a subsequent tenant or existing tenants in the affected unit.

14.04.  Filing Requirements. The Landlord must file the fully executed Buyout Agreement, as well as the fully executed Disclosure Form, with Program Staff within thirty (30) days from the date that the Tenant and Landlord signed the Buyout Agreement. Program staff shall comply with the following procedure with respect to the filed Buyout Agreements

a.      Buyout Agreements shall be held in a separate file.

b.      The City must maintain the Tenant's personal identifying information as confidential and in a manner consistent with the California Civil Code 1947.7(g).

c.      Subject to the limitations in subsection b, Program Staff may collect data from the Buyout Agreements—including, but not limited to, the amount of consideration paid.

14.05.  Exemptions: Any and all agreements made to settle a pending Unlawful Detainer shall not be considered Buyout Offers or Buyout Agreements under this Chapter or the Ordinance.

T-30318.003.001/1464175_4
Council Agenda:  11-14-17
Item No.:  4.5(b)

APPENDIX A

CAPITAL IMPROVEMENT AMORTIZATION PERIOD IN YEARS

| | |
|---|---|
| Air Conditioner | 10 |
| Major Appliances (other than those listed) | 7 |
| Cabinets | 10 |
| Dishwasher | 7 |
| Doors | 10 |
| Dryer | 7 |
| Drywall | 10 |
| Electric Wiring | 15 |
| Elevator | 20 |
| Fencing | 10 |
| Fire Alarm System | 10 |
| Fire Escape | 10 |
| Flooring | 7 |
| Garbage Disposal | 7 |
| Gates | 10 |
| Gutters | 10 |
| Heating | 10 |
| Insulation | 10 |
| Locks | 7 |
| Paving | 10 |
| Plumbing | 10 |
| Pumps | 10 |
| Refrigerator | 10 |
| Roofing | 10 |
| Security System | 10 |
| Stove | 10 |
| Stucco | 10 |
| Washing Machine | 7 |
| Water Heater | 7 |

A-1

APPENDIX B

## SPECIFIED CAPITAL IMPROVEMENTS AMORTIZATION PERIOD IN YEARS

| Category or Type of Specified Capital Improvement | Amortization Period (Years) | Section Reference (§9.03.2) |
|---|---|---|
| ADA Improvements | | a |
|     Ramps | 10 | |
|     Driveway Egress | 10 | |
|     Elevators | 20 | |
| Air Conditioning | 10 | b |
| Conservation | 10 | a |
|     Drought Tolerant Landscape | 5 | |
|     Submetering | 10 | |
|     Solar power panels | 10 | |
| Fire Prevention | | a |
|     Fire Alarm System | 10 | |
|     Fire Escape | 10 | |
|     Fire Sprinklers/Retardant System | 10 | |
| Insulation | 10 | a or b |
| Security System (including security gates and fencing) | 10 | a or b |
| Seismic Retrofits* | | a |
|     Foundation Repair | 20 | |
|     Foundation Replacement | 20 | |
|     Foundation Bolting | 20 | |
|     Iron or Steel Work | 20 | |
|     Masonry-Chimney Repair | 20 | |
|     Shear Wall Installation | 20 | |
|     Soft Story Retrofit | 20 | |
| *Required *architectural and engineering cost may be included.* | | |
| Windows | 10 | a or b |

T-30318.003.001/1464175_4
Council Agenda: 11-14-17
Item No.: 4.5(b)